John E. COX, III, Plaintiff

v.

MAINE STATE POLICE,
et al., Defendants

No. CIV.03–97–P–H.

United States District Court,
D. Maine.

May 27, 2004.

Timothy Zerillo, Portland, ME, for John E. Cox, III, Plaintiff.

William R. Fisher, Office of the Maine Attorney General, Augusta, ME, for Maine State Police and John Hainey and Oxford County District Attorneys Office, Defendants.

## ORDER ADOPTING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

The issue here is whether a state trooper should receive qualified immunity for a drug arrest he made after receiving approval from an assistant district attorney. The charges against the arrestee were later dropped.

The plaintiff John Cox ("Cox") has asserted several state and federal claims against the Maine State Police, Trooper John Hainey ("Trooper Hainey"), and the Oxford County District Attorney's Office ("DA's Office") arising out of his May 9, 2001, arrest for aggravated furnishing of a scheduled drug.[1] The United States Magistrate Judge filed with the Court on March 30, 2004, his Memorandum Decision on Defendants' Motion to Strike and Recommended Decision on Defendant's Motion for Summary Judgment. The Magistrate Judge recommended summary judgment in favor of the Maine State Police on all claims, in favor of the DA's Office on all federal claims, and in favor of Trooper Hainey on a state defamation claim and on a federal punitive damages claim. Cox has not objected to those recommendations. The Magistrate Judge also recommended that a federal constitutional claim (based upon lack of probable cause for the arrest) proceed against Trooper Hainey and that state law claims proceed against the DA's Office for malicious prosecution, and negligent and intentional infliction of emotional distress (Counts III, V, VII). Trooper Hainey and the DA's Office filed an objection to the Recommended Decision on April 16, 2004, objecting to the Magistrate Judge's conclusions that Trooper Hainey is not entitled to qualified immunity and that the claims against the DA's Office can proceed to trial.

I have reviewed and considered the Recommended Decision; I have made a *de novo* determination of all matters objected to in the Recommended Decision pursuant to Fed.R.Civ.P. 72; and I ADOPT IN PART AND REJECT IN PART the Recommended Decision as discussed below. I ADOPT the Magistrate Judge's decision on all matters where there has been no objection. Thus, the Maine State Police is entitled to summary judgment; the DA's Office is entitled

1. Other defendants have been dismissed by stipulation.

to summary judgment on Counts IX and X; and Trooper Hainey is entitled to summary judgment on Count VIII (defamation), Counts IX and X related to the Fifth and Eighth Amendments, claims of malicious prosecution and claims for punitive damages. However, I REJECT the conclusion of the Recommended Decision that Trooper Hainey should not receive summary judgment on all remaining federal claims. Instead, I conclude that Trooper Hainey is entitled to qualified immunity. Since that resolves all federal claims, the remaining state law claims against the DA's Office are REMANDED to state court.

## ANALYSIS

### (1) Qualified Immunity for Trooper Hainey

The analysis of a qualified immunity defense for Trooper Hainey requires that I determine whether the actions Cox complains of amount to a violation of a constitutional right (here, the right to remain free of arrest unless there is probable cause); if so, whether the contours of the right were clearly established at the time of the violation; and, if so, whether an objectively reasonable officer possessing the information available to Trooper Hainey would have believed that the arrest violated Cox's constitutional right. *See Acevedo–Garcia v. Monroig,* 351 F.3d 547, 563–64 (1st Cir.2003) (citation omitted); *Abreu–Guzman v. Ford,* 241 F.3d 69, 73 (1st Cir.2001) (citations omitted). On the defendants' motion for summary judgment, I view the factual record in the light most favorable to Cox, the non-moving party,

and give Cox the benefit of all reasonable inferences in his favor. *See, e.g., Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997). The defendants do not object to the Recommended Decision's conclusion that Cox has alleged conduct amounting to a violation of a constitutional right (*i.e.,* being arrested without probable cause). Therefore, I do not review that issue. This right was clearly established at the time of the alleged violation.[2] *Abreu–Guzman,* 241 F.3d at 73. *Accord* Recommended Decision at 23. The crux of the defendants' objection is the third component of qualified immunity: whether an objectively reasonable officer would have understood that the arrest violated Cox's clearly established constitutional right to be arrested only on probable cause. *See, e.g., Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Abreu–Guzman,* 241 F.3d at 73; *Topp v. Wolkowski,* 994 F.2d 45, 48 (1st Cir.1993).

A police officer is afforded qualified immunity so long as the presence of probable cause is at least arguable. *See Fletcher v. Town of Clinton,* 196 F.3d 41, 53 (1st Cir.1999) (citation omitted). "Probable cause," for purposes of a warrantless arrest, means a "reasonable likelihood" that a crime has been committed by the person to be arrested. *Valente v. Wallace,* 332 F.3d 30, 32 (1st Cir.2003) (citing *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The First Circuit has described probable cause as a "fluid concept":

---

**2.** The defendants criticize the Recommended Decision's reliance on *Abreu–Guzman* arguing that the right "that arrests be based upon probable cause" is too general for purposes of determining whether the right was clearly established in the qualified immunity analysis. Defs.' Objection to Recommended Decision at 10–11 (citing *Anderson v. Creighton,* 483 U.S.

635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (Docket Item 36). However, the First Circuit clearly stated that "[i]t has been established for a very long time that the Fourth Amendment requires that arrests be based on probable cause." *Abreu–Guzman,* 241 F.3d at 73 (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

Its existence must be evaluated under the entirety of the circumstances. Probable cause to arrest does not demand either the same quantum of proof or the same degree of certitude as a conviction. Probable cause does, however, require reasonably trustworthy information such as would lead a prudent person to believe that the suspect *likely* had committed or was committing a criminal offense.

*United States v. Lee,* 317 F.3d 26, 32 (1st Cir.2003) (emphasis added) (citations omitted).

Trooper Hainey arrested Cox for aggravated furnishing of a scheduled drug. An objectively reasonable officer would have had the following information available in evaluating the existence of probable cause for that arrest [3]:

A confidential informant ("CI") told police that Joseph Cox (Cox's 15–year–old son [4]) was selling drugs to students at Oxford High School. Defs.' Statement of Material Facts ("Defs.' SMF") ¶ 7 (Docket Item 18); Pl.'s Opposing Statement of Material Facts ("Pl.'s Opposing SMF") ¶ 7 (Docket Item 24). The CI agreed to set up a controlled drug purchase from Joseph Cox. Defs.' SMF ¶ 8; Pl.'s Opp'n SMF ¶ 8. After being supplied with an electronic sound transmitting device, Defs.' SMF ¶ 15; Pl.'s Opposing SMF ¶ 15, the CI proceeded to the Cox residence under police supervision. Defs.' SMF ¶ 17; Pl.'s Opposing SMF ¶ 17. He was inside the residence for about ninety minutes, Defs.' SMF ¶ 22; Pl.'s Opposing SMF ¶ 22, and police could hear the conversations over the transmitting device. Defs.' SMF ¶¶ 16, 18–19; Pl.'s Opposing SMF ¶¶ 16, 18–19. During that time, Cox's son, Joseph, sold the CI four dosage units of oxycodone hydrochloride ("Roxicodone"). Defs.' SMF ¶¶ 19, 23–24; Pl.'s Opposing SMF ¶¶ 19, 23–24. Through the transmitting device, Trooper Hainey heard Joseph tell the CI inside the Cox residence that Joseph's father had recently come back from North Carolina on a "drug run," [5] and that he would also have his father get "an eighth of marijuana" for the CI. [6] Defs.' SMF ¶ 20; Hainey Dep. at 16. Cox, the

---

**3.** Whether probable cause should be measured against only the crime of arrest—here, aggravated furnishing of a scheduled drug—was not argued or briefed by the parties. The First Circuit has adopted the "related crimes defense." "An officer's erroneous legal description of the basis for an arrest should not expose the officer to liability if another officer would have concluded that there was probable cause to arrest for a related offense on the basis of the same conduct.... [W]e should consider whether the conduct in question would allow a reasonable officer to conclude that probable cause existed to arrest for the related crime offered as justification." *Sheehy v. Town of Plymouth,* 191 F.3d 15, 20 (1st Cir.1999). The Magistrate Judge did conclude that "a reasonable officer standing in Hainey's shoes could have (i) at least arguably found probable cause to believe John Cox guilty of trafficking in marijuana ...." Recommended Decision at 23. Because the parties have not argued it, I have not relied upon probable cause for arrest for the lesser crime.

**4.** In May 2001, Joseph was 15 years old. *Cf.* Defs.' SMF ¶ 1; Pl.'s Opposing SMF ¶ 1. Joseph's age is significant to the charge of *aggravated* furnishing, which applies to furnishing to "a child who is in fact less than 18 years of age." *See* 17–A M.R.S.A. § 1105–C(1)(A).

**5.** Cox does not dispute this statement, but consulting the police record in support reveals that Trooper Hainey heard Joseph Cox say "dope run," and that both father and son made the trip together. *See* Hainey Dep., Ex. 1, Maine State Police Investigation Report at 4.

**6.** Cox purports to dispute this assertion. *See* Pl.'s Opposing SMF ¶ 20. However, his disagreement is not supported by a record citation as required by Local Rule 56(c) and is therefore disregarded pursuant to Local Rule 56(e).

father, was not at home. Pl.'s Statement of Material Facts in Dispute ("Pl.'s SMF in Dispute") ¶ 12 (Docket Item 26); Defs.' Response to Pl.'s Statement of Material Facts in Dispute ("Defs.' Response to Pl.'s SMF in Dispute") ¶ 12 (Docket Item 29). A search of the Cox residence eleven days later pursuant to a warrant revealed two Roxicodone[7] tablets and drug paraphernalia in son Joseph's bedroom. Defs.' SMF ¶ 30; Pl.'s Opposing SMF ¶ 30. A triple-beam scale with marijuana residue, an empty Roxicodone bottle and a bottle of sixty-five Roxicodone tablets were found in the family kitchen. Defs.' SMF ¶ 31; Pl.'s Opposing SMF ¶ 31. Both father and son were home at the time of the search. Defs.' SMF ¶ 33; Pl.'s Opposing SMF ¶ 33; Hainey Dep., Ex. 1, Maine State Police Investigation Report at 4.

Cox, the father, told officers at the time of the search that he had a prescription for oxycodone, including the Roxicodone pills found in his house.[8] Pl.'s SMF in Dispute ¶ 4; Defs.' Response to Pl.'s SMF in Dispute ¶ 4; Defs.' SMF ¶ 33; Pl.'s Opposing SMF ¶ 33. Cox denied that he had provided Roxicodone pills to his son or anyone else. Pl.'s SMF in Dispute ¶ 5; Defs.' Response to Pl.'s SMF in Dispute ¶ 5. Cox said that he kept his pills "on his person" at all times except when sleeping.[9] Defs.' SMF ¶ 33; Pl.'s Opposing SMF ¶ 33. Cox also stated that he accounts for the number of pills he uses and that if anybody took some of them, he would know about it. Defs.' SMF ¶ 34; Pl.'s Opposing SMF ¶ 34. He said that on April 21, 2001 (before the controlled buy), he called his pharmacist because he felt that he was missing a few of his Roxicodone pills. Pl.'s SMF in Dispute ¶ 2; Defs.' Response to Pl.'s SMF in Dispute ¶ 2.[10]

7. The Defendants' Objection to the Recommended Decision, at 12, says Roxicodone; the Defendants' Statement of Material Facts uses only the generic term oxycodone, Defs.' SMF ¶ 30, but the underlying police document says Roxicodone, Hainey Dep., Ex. 1. Maine State Police Investigation Report at 4. Moreover, the pills were of the same size and color as those Joseph sold the CI. Defs.' SMF ¶ 36; Pl.'s SMF ¶ 36.

8. Roxicodone and OxyContin both contain oxycodone hydrochloride (also known simply as oxycodone), the difference being that OxyContin is a time-release drug while Roxicodone is not. *See* Defs.' SMF ¶¶ 23, 25; Pl.'s Opposing SMF ¶¶ 23, 25.

9. The Defendants' Statement of Material Facts states that John Cox, the father, also said that "the scale was for his 'personal use,'" and that he "denied any involvement in selling drugs." Defs.' SMF ¶ 32. The plaintiff denies that the scale was for personal use, Pl.'s Opposing SMF ¶ 32, but provides no record support and so could be treated as admitting it. *See* Local Rule 56(e). When I consult the record support for the defendants' assertions, however, I find that those statements were made after Cox's arrest. Hainey Dep., Ex. 1, Maine State Police Investigation

Report at 6. It therefore cannot be part of the probable cause analysis.

10. The parties engage in an unfruitful dispute over how to treat one of the plaintiff's statements of undisputed facts. The plaintiff advanced the following as an undisputed fact:

3. During the time the search warrant was executed there was no evidence of drug trafficking or drug furnishing activities that could be attributed to the Plaintiff (other than a scale that would not be used in trafficking Oxycontin or Roxicodone). John Cox Affidavit ¶ 13; Hainey Dep. at 29–32.

The defendants responded:

**Qualified.** A triple beam scale with marijuana residue was found in the kitchen "hutch." Hainey Dep. Exhibit 2 at p. 1, "Item Number" 6. In Trooper Hainey's experience, these scales are "[o]ften used for measuring large amounts of marijuana." Hainey Dep. at p. 30, Lines 2–13. John Cox admitted that the scale was his. *Id.*, Exhibit 1 at p. 6. "Miscellaneous drug paraphernalia" was also found in the Plaintiff's bedroom. *Id.* at p. 31, Lines 6–8; Hainey Dep. Exhibit 2 at p. 2, "Item Number" 9. Six plastic bags containing marijuana resi-

Trooper Hainey next conferred with an assistant district attorney,[11] discussing the items and information obtained during the search of the Cox residence and the existence of probable cause to arrest Cox, Defs.' SMF ¶ 35; Pl.'s Opposing SMF ¶ 35.

The assistant district attorney agreed that probable cause existed to arrest Cox. Defs.' SMF ¶ 37; Pl.'s Opposing SMF ¶ 37.

I conclude that based on the above information, a reasonable officer could believe that probable cause arguably existed. I

due were found throughout the house in plain view. Hainey Dep. Exhibit 1 at p. 5. Defs.' Response to Pl.'s SMF in Dispute ¶ 3. The Magistrate Judge incorporated the plaintiff's statement as part of his statement of undisputed facts because the defendants' response was "inconsistent with the underlying assertion to which it responds, and I view the cognizable record in the light most favorable to the Plaintiff as non-movant." Recommended Decision at 10 n. 10. The parties continue to argue over this assertion and response in their legal memoranda following the Recommended Decision. To the extent I understand the dispute (and it seems to be largely semantic), I bypass it. The determination of probable cause is based upon a combination of facts and circumstances available to the arresting officer. Here, the triple beam scale with marijuana residue discovered in the search was relevant to the existence of probable cause on the oxycodone charge in at least a couple of ways. First, it could corroborate the statements Trooper Hainey heard son Joseph make eleven days earlier during the recorded undercover buy. Then, Joseph said both that his father had just returned from a "drug run" (or dope run) to North Carolina and that his father could get marijuana for the CI. The evidence of marijuana-related activity the search revealed could show that Joseph was not simply telling tall tales in that overheard description of his father's drug trafficking involvement. Second, the physical evidence showing that Cox was willing to be involved in marijuana activity was of some import in determining whether it was plausible that he would sell his prescribed Roxicodone pills or provide them to his son.

11. According to Defs.' SMF ¶ 36, "Hainey believed that probable cause existed to arrest Cox on May 9, 2001 based upon information and items obtained during the search, John's prior marijuana and possession of drug paraphernalia arrests, John's statement that if someone had taken any of his pills he would have known about it, the fact that Joseph had possession of some of the pills, the fact that

pills of the same size and color were purchased by the confidential informant on April 28, 2001, and Joseph's claim that his father left pills around the house."

The plaintiff does not dispute that this was Trooper Hainey's belief, but Trooper Hainey's subjective belief is not relevant to determining whether an objectively reasonable officer would believe there was probable cause to arrest Cox. See n. 12, infra. The plaintiff also does not dispute the underlying facts of this belief. (The plaintiff only purports to dispute that the he left pills around the house, see Pl.'s Opposing SMF ¶ 36, but his disagreement is not supported by a record citation as required by Local Rule 56(c) and therefore can be disregarded pursuant to Local Rule 56(e).) Arguably, there is record support for the assertion that Joseph's statements and the information about Cox's prior arrests were available at the time of Cox's arrest to establish the existence of probable cause. See Hainey Dep. at 19–20, 22. According to the Maine State Police Investigation Report, Joseph was inside the residence when the search warrant was executed, see Hainey Dep., Ex. 1, Maine State Police Investigation Report at 4, but there is no contemporaneous record evidence that Joseph's statements were made before his father was arrested. The contemporaneous record evidence available suggests that Joseph's statements that his father "leaves [pills] around the house" and that his father "did not know about [Joseph] selling" drugs (presumably the impetus for Trooper Hainey's deposition testimony that Joseph denied that Cox had ever given him oxycodone tablets, see Hainey Dep. at 22) were made after both Joseph and his father had been arrested. See Hainey Dep., Ex. 1, Maine State Police Investigation Report at 6. It is also not evident from deposition testimony when Trooper Hainey learned of Cox's prior marijuana and possession of drug paraphernalia arrests. Viewing the factual record most favorably to Cox, I have left Joseph's statements and the prior arrests of his father out of the probable cause analysis.

point out first that a reasonable officer "is under no obligation to give any credence to a suspect's story" in deciding whether there is probable cause. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988).[12] At the time of the arrest, the officer knew the following: Cox had a prescription for Roxicodone; Cox's son had sold Roxicodone pills in the house to a CI eleven days before; Cox's son had told the CI that Cox, his father, had recently returned from North Carolina on a drug (or dope) run; Cox's son told the CI that Cox would get him marijuana; a triple beam scale with marijuana residue was found in the family kitchen; an empty Roxicodone bottle was found in the family kitchen along with a bottle of sixty-five Roxicodone pills; and two Roxicodone pills were found in son Joseph's bedroom. Given that information, a reasonable officer was not required to consider Cox's statements that he was not involved in drug activity.

■ Importantly, thereafter Trooper Hainey shared all this information with an assistant district attorney and obtained the assistant district attorney's view that there was probable cause for the arrest.[13] The First Circuit has not addressed how advice from a district attorney affects a qualified immunity reasonableness inquiry. Judge Brody of this Court has said that it is reasonable for an officer to abide by the advice of an assistant district attorney to interpret language of a warrant. *See Miller v. Kennebec County*, 63 F.Supp.2d 75, 81 (D.Me.1999), *rev'd in part on other grounds*, 219 F.3d 8 (1st Cir.2000). Moreover, the Seventh Circuit has held that a police officer is entitled to qualified immunity in a section 1983 action if the officer consulted a district attorney or prosecutor before making the arrest and thus had a reasonable basis for believing that there was probable cause to make the arrest. *See Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir.2004). *See also Lavicky v. Burnett*, 758 F.2d 468, 476 (10th Cir.1985); *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir.1985). Such a rule is sensible because it encourages the police to consult with prosecutors before making an arrest—"a valuable screen against false arrest." *Kijonka*, 363 F.3d at 648. Qualified immunity for a police officer does not attach automatically to advice from a prosecutor or district attorney. Reliance on the advice obtained from a district attorney still must be objectively reasonable in light of the officer's conversation with the district attorney and the amount of information the officer and district attorney had available at the time. *Cf. Miller*, 219 F.3d at 11 (no qualified immunity where district attorney did not see warrant and lacked information about what was said by arrestee). *See also Womack v. City of Bellefontaine Neighbors*, 193 F.3d 1028, 1031 (8th Cir.1999). But advice based upon a fair presentation of the available information certainly supports an objective reasonableness conclusion.

■ The evidence here for Cox's involvement was certainly not overwhelming,

---

**12.** I also point out that Trooper Hainey's subjective intent and what he actually believed are irrelevant. *Abreu–Guzman*, 241 F.3d at 73 (citing *Crawford–El v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).

**13.** "Trooper Hainey conferred with Assistant District Attorney ('ADA') Richard Beauchesne of the Oxford County District Attorney's Office.... Hainey went over the items and information obtained during the search of the Cox residence and discussed the existence of probable cause existed to arrest John Cox...." Defs.' SMF ¶ 35; Pl.'s Opposing SMF ¶ 35. "ADA Beauchesne agreed with Trooper Hainey that probable cause existed to arrest John Cox...." Defs.' SMF ¶ 37; Pl.'s Opposing SMF ¶ 37.

and the charge was later dropped. But at the time of the arrest, the supply of Roxicodone in the house from Cox's prescription, the presence of pills in the kitchen and his son's bedroom, his son's previous sale of Roxicodone in the family house and his statements about his father's drug activity (confirmed to some degree by a scale with marijuana residue found in the family kitchen) were enough to furnish a reasonable likelihood that Cox supplied the Roxicodone to his son—notwithstanding his protestations of innocence. Particularly when the officer received the added confirming informed judgment of an assistant district attorney that probable cause existed, I conclude that an objectively reasonable officer could believe that probable cause (a "reasonable likelihood") was arguably present to arrest Cox for aggravated furnishing of a scheduled drug to his son. Trooper Hainey is entitled to qualified immunity and therefore summary judgment as to Count IX and its companion Count X requesting attorneys fees pursuant to 42 U.S.C. § 1988.

### (2) Remand of Remaining State Claims

■ This case was removed to federal court on April 29, 2003, pursuant to 28 U.S.C. § 1446. However, all federal claims have now been resolved and only certain state claims remain. A federal court, in its discretion, may relinquish jurisdiction after removal when there is no longer a basis for federal subject matter jurisdiction. See 28 U.S.C. § 1367(c)(3) (1993). See also Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Menorah Ins. Co., Ltd. v. INX Reins. Corp., 72 F.3d 218, 224 (1st Cir.1995); Rose v. Baystate Med. Ctr., Inc., 985 F.Supp. 211, 219 (D.Mass.1997) (after loss of federal claim on summary judgment, district court can remand other state claims); accord Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper,

Federal Practice and Procedure, § 3739, at 436–440 (1998) (stating that "if the jurisdictionally sufficient claims are dismissed before the trial commences, the district court normally should remand the jurisdictionally insufficient supplemental claims to the state court . . ., although it has some discretion to retain and adjudicate them").

Given that only state law issues remain, state court adjudication best serves the interests of "economy, convenience, fairness, and comity." See Cohill, 484 U.S. at 353, 108 S.Ct. 614. I therefore remand the remaining state law claims against the DA's Office to state court.

### CONCLUSION

Summary judgment is entered in favor of the Maine State Police on Counts I, II, IV, VI, VIII, IX and X, thereby removing the Maine State Police from the lawsuit.

Summary judgment is entered in favor of the DA's Office on Counts IX and X. Counts III, V and VII remain and are REMANDED to state court.

Summary judgment is entered in favor of Trooper Hainey on Counts VIII, IX and X, thereby removing Trooper Hainey from the lawsuit.

The case is remanded to the Maine Superior Court (Oxford County).

SO ORDERED.