# United States Court of Appeals
## For the First Circuit

No. 04-1761

JOHN E. COX III,

Plaintiff, Appellant,

v.

JOHN HAINEY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

Timothy E. Zerillo and Timothy Zerillo Law Offices, LLC on brief for appellant.
G. Steven Rowe, Attorney General, and William R. Fisher, Assistant Attorney General, on brief for appellee.

December 1, 2004

**SELYA**, <u>Circuit Judge</u>. In this case, the district court entered summary judgment in favor of defendant-appellee John Hainey, a state trooper, on a false arrest claim under 42 U.S.C. § 1983. Plaintiff-appellant John E. Cox III assigns error to the court's determination that qualified immunity shielded Hainey from suit. After careful perscrutation of an oddly configured factual record (including consideration of how, if at all, an officer's pre-arrest consultation with a prosecutor affects the qualified immunity calculus), we affirm the district court's order.

## I. BACKGROUND

On an appeal from a summary judgment order, an appellate court is held to the same ground rules that bound the trial court in the proceedings below: it must "construe the record and all reasonable inferences from it in favor of the nonmovant." <u>Perez</u> v. <u>Volvo Car Corp.</u>, 247 F.3d 303, 310 (1st Cir. 2001). We rehearse the facts with this construct in mind. Because the reasonableness of Trooper Hainey's conclusion that he had probable cause to make an arrest is the axis of this appeal, we concentrate on the information available to him at the time of the arrest.

Our saga starts in Norway, Maine. Members of the Norway police department arrested Joseph Cox, the appellant's fifteen-year-old son, for alleged involvement in a series of snowmobile thefts that occurred during the winter of 2000-2001. In the course of the ensuing investigation, an informant volunteered that Joseph

had sold drugs to high school students. The informant expressed a willingness to participate in a controlled buy, and the local gendarmes arranged a sting. The Maine State Police were asked to assist.

On April 28, 2001 — all dates are in that year unless otherwise indicated — the informant, fitted with an electronic listening device, drove to the appellant's residence in Woodstock, Maine. Hainey and a local police officer followed in a second vehicle. Once there, the informant went inside and purchased four tablets of Roxicodone (a non-time-released version of Oxycontin) from Joseph Cox. Hainey, who listened to the conversation by transmitter, overheard Joseph tell the informant that his father recently had returned from a "drug run" to North Carolina and that he could have his father procure "an eighth of marijuana" for future purchase.

Based on what he knew to that point, Hainey obtained a warrant to search the Cox home for scheduled drugs, drug paraphernalia, and kindred items related to furnishing or trafficking in drugs. Hainey and other officers conducted the search on the morning of May 9. In Joseph's bedroom, they found two Roxicodone tablets and drug paraphernalia. In the kitchen, they found a triple-beam scale with marijuana residue, a bottle containing sixty-five Roxicodone tablets, and an empty Roxicodone bottle. The appellant was present during the search. He told the

officers that the Roxicodone had been legally prescribed for his back condition, that he never had provided pills to his son or to anyone else (but, rather, had kept them on his person at all times except while sleeping), and that he had called his pharmacist on April 21 because he was concerned that a few of his pills were missing.

Later that morning, Trooper Hainey consulted with Richard Beauchesne, an assistant district attorney. The two reviewed the evidence obtained during the search; discussed whether that evidence, together with the information previously known to Hainey, amounted to probable cause to arrest the appellant; and agreed that it did. Hainey then made the arrest. The appellant was booked and released on bail that day. The bail bond indicated that his arrest had been for aggravated furnishing of a schedule W drug.[1] See Me. Rev. Stat. Ann. tit. 17-A, §§ 1105-C(1)(A)(1), 1106. After some jockeying, see supra note 1, the assistant attorney general assigned to the case determined that he would not issue a complaint.

---

[1]The appellant's brief makes several references to another crime: aggravated trafficking of a scheduled drug in violation of Me. Rev. Stat. Ann. tit. 17-A, § 1103. Though the appellant was later charged with that offense by an assistant attorney general, the record indicates that Hainey never made any recommendation to that effect. Thus, for purposes of our qualified immunity analysis, we consider only the reasonableness of Hainey's decision to arrest the appellant for aggravated furnishing of a scheduled drug.

Once all charges had been dropped, the appellant filed suit in a Maine state court against various officers and entities. He alleged, under 42 U.S.C. § 1983, that the named defendants had violated his constitutional rights and, in the bargain, had committed a variety of tortious acts. The defendants removed the case to the United States District Court for the District of Maine. See 28 U.S.C. §§ 1331, 1441, 1446.

The sole count relevant to this appeal charges that Hainey violated the appellant's Fourth Amendment rights by arresting him without probable cause (for simplicity's sake, we eschew any reference to other defendants and claims). When Hainey moved for summary judgment on that count, the district court referred the matter to a magistrate judge. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). The magistrate judge recommended that the count proceed to trial.

Hainey lodged a timely objection to the recommendation. Upon de novo review, see Fed. R. Civ. P. 72(b), the district court rejected the magistrate judge's view and found Hainey entitled to qualified immunity on the ground that an objectively reasonable police officer could have understood that there was probable cause to arrest the appellant. Cox v. Me. State Police, 324 F. Supp. 2d 128, 135 (D. Me. 2004). Accordingly, the court granted summary judgment in Hainey's favor. Id. at 130. This appeal followed.

**II. ANALYSIS**

The appellant asseverates that Hainey was not entitled to qualified immunity and, therefore, that the district court erred in granting summary judgment. After limning the standard of review and the doctrinal hereditaments appurtenant to qualified immunity, we proceed to determine whether Hainey was deserving of sanctuary.

**A. Standard of Review**.

We afford plenary review to the district court's disposition of a summary judgment motion. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). We will affirm a grant of summary judgment as long as the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In conducting this tamisage, we "utiliz[e] the same criteria as the trial court," drawing all reasonable inferences from the record in the nonmovant's favor. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 8 (1st Cir. 2004). A decision to affirm a summary judgment order may be grounded on any rationale revealed by the record, whether or not the lower court employed that rationale. Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

In this instance, the appellant abjures any claim that a trialworthy factual dispute exists. He nonetheless insists that the undisputed facts do not sustain the qualified immunity defense

and, thus, as a matter of law, do not entitle Hainey to summary judgment. This posture is important because, in the absence of a genuine issue of material fact, a defendant's right to qualified immunity presents a question of law. Rivera v. Murphy, 979 F.2d 259, 261 (1st Cir. 1992).

## B. The Legal Landscape.

Before plunging into the qualified immunity inquiry, we deem it useful to marshal the general principles that steer that inquiry. The appellant sues under 42 U.S.C. § 1983, which imposes liability upon an individual who, acting under color of state law, deprives a person of federally guaranteed rights. Camilo-Robles v. Hoyos, 151 F.3d 1, 5 (1st Cir. 1998). Withal, a public actor's liability under section 1983 "is not absolute: the doctrine of qualified immunity provides a safe harbor for a wide range of mistaken judgments." Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001); see also Anderson v. Creighton, 483 U.S. 635, 641 (1987). This strain of immunity aspires to "balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive." Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992). In that way, the doctrine of qualified immunity protects public officials from civil

liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity serves not only as a defense to liability but also as "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Seen in this light, many of the benefits of qualified immunity are squandered if an action is incorrectly allowed to proceed to trial. It follows that the applicability vel non of the qualified immunity doctrine should be determined at the earliest practicable stage in the case. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

The Supreme Court has set up a sequential analysis for determining whether a defendant violated clearly established rights of which a reasonable person would have known. See Saucier v. Katz, 533 U.S. 194, 201-06 (2001). This court has construed that framework to consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon,

-8-

372 F.3d 39, 44 (1st Cir. 2004). Under ordinary circumstances, the development of the doctrine of qualified immunity is best served by approaching these inquiries in the aforestated sequence. See Saucier, 533 U.S. at 201; Wilson v. Layne, 526 U.S. 603, 609 (1999). We proceed accordingly.

## C. **Qualified Immunity**.

We have noted that the first variable in our algorithm — whether the plaintiff has alleged facts that show that the defendant's conduct violated a constitutional right — should be treated as a "threshold question." Limone, 372 F.3d at 44. Here, the appellant premises his section 1983 claim on an allegation that the facts and circumstances known to Hainey at the time of the arrest did not give rise to a reasonable likelihood that he (the appellant) had furnished Roxicodone to his son or any other minor and, therefore, that the arrest transgressed the Fourth Amendment. The first prong of the qualified immunity analysis operates at a high level of generality, and Hainey, based on Cox's allegations, concedes this prong. See Appellee's Br. at 11-12 ("Cox alleged conduct that amounts to a violation of a constitutional right — the Fourth Amendment right to remain free of an arrest unless there is probable cause. Accordingly, he has satisfied the first part of this court's qualified immunity inquiry.").

We accept this concession. The Fourth Amendment undoubtedly recognizes the right to be free from unreasonable

seizures of the person.  See, e.g., Beck v. Ohio, 379 U.S. 89, 91 (1964).  Hence, the undisputed facts, construed in the light most favorable to the appellant, make out a colorable claim of constitutional dimension.  No more is exigible to satisfy the first part of the tripartite inquiry.

We can be equally quick in executing the second step of the qualified immunity pavane.  As said, Cox alleges that Hainey arrested him with insufficient information to constitute probable cause.  The right to be free from arrest without constitutionally adequate probable cause is clearly established.  See Wagenmann v. Adams, 829 F.2d 196, 209 (1st Cir. 1987).  That satisfies the second part of the tripartite inquiry.

Even though the right to be free from an arrest without probable cause is clearly established, a further hurdle remains.  In Anderson, the Supreme Court clarified the qualified immunity analysis by explaining that, although it was firmly established that warrantless searches, not subject to any recognized exception, violate the Fourth Amendment, more was needed before qualified immunity could be deemed irrelevant.  483 U.S. at 640-41.  The court below was required to determine whether the defendant had confronted particular circumstances in which the application of general principles did not yield a certain answer and, if that were the case, to determine whether the defendant had responded reasonably to that idiosyncratic fact pattern.  See id.  In short,

to set aside the buckler of qualified immunity "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Id. at 640.

This guidance is pertinent here. In settings that invite balancing tests, it is often the case that the first two prongs of the qualified immunity inquiry do not satisfy Anderson's requirement of heightened specificity. This is particularly true of alleged false arrests, given the fact-dependent nature of the probable cause determination. No two probable cause equations are exactly alike and, therefore, in most of these situations precedent will take a court only so far. Thus, such cases frequently turn on the third prong of the qualified immunity inquiry, which channels the analysis from abstract principles to the specific facts of a given case. See Limone, 372 F.3d at 48; Hatch, 274 F.3d at 24. Under that prong, a defendant "is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest." Rivera, 979 F.2d at 263. We turn to that requirement.

Probable cause exists "when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators." Acosta, 386 F.3d at 9. The test is objective in nature, United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987), and the proof must

be such as to give rise to a reasonable likelihood that the putative arrestee committed the suspected crime, Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003).

Qualified immunity, however, requires a somewhat lesser showing. For that purpose, the operative inquiry is not whether the defendant's actions actually abridged some constitutional right, see Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992), but, rather, whether those actions were obviously inconsistent with that right, see Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999). Thus, in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach. See Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992).

This is as it should be: after all, "the reasonableness standards underlying the probable cause and qualified immunity inquiries are not coterminous." Iacobucci v. Boulter, 193 F.3d 14, 23 (1st Cir. 1999). The qualified immunity doctrine is designed to afford officials an added measure of protection against civil liability. To achieve that goal, the doctrine eschews a line that separates the constitutional from the unconstitutional and instead draws a line that separates unconstitutional but objectively reasonable acts from obviously unconstitutional acts. See Zapata, 175 F.3d at 43. When properly drawn, that line "provides ample protection to all but the plainly incompetent or those who

-12-

knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). It follows that this suit may go forward only if the unlawfulness of the arrest would have been apparent to an objectively reasonable officer standing in Hainey's shoes. See Anderson, 483 U.S. at 640; Limone, 372 F.3d at 44.

We now consider what Hainey knew and when he knew it. The point of our inquiry is to determine whether, at the time of the arrest, an objectively reasonable officer could have concluded that the salmagundi of facts added up to probable cause.

Hainey had reason to believe, from Joseph Cox's comments, that the appellant was likely involved in furnishing marijuana to his son (and possibly to others). The discovery of the triple-beam scale in the family kitchen tended both to corroborate the teenager's remarks and to confirm Hainey's understanding. The trooper knew that the Roxicodone tablets found during the search had been prescribed for the appellant and were, by his own admission, in his nearly exclusive control. But Hainey also had reason to doubt the appellant's claim that he was scrupulous in guarding the pills; after all, the search disclosed two Roxicodone bottles (one empty and one full) in the kitchen and two loose tablets in Joseph Cox's bedroom. Hainey's knowledge that Joseph Cox had obtained and sold four other Roxicodone tablets to the informant cut in the same direction.

Given Joseph's indication that his father was willing to supply marijuana to minors, the presence of Roxicodone and drug paraphernalia (the scale) in plain view in the kitchen of the appellant's home, and Joseph's actual possession of Roxicodone, it was objectively reasonable for Hainey to infer that the appellant had furnished those pills to his minor son.[2]  Though Hainey's judgment call may walk a thin line between probable cause and mere suspicion, it cannot be shrugged off as plainly incompetent.

To cinch matters, Hainey took the precaution of reviewing the known facts with the local prosecutor.  This consultation, and the assistant district attorney's agreement with Hainey's preliminary assessment that probable cause existed, buttress the conclusion that Hainey's actions were objectively reasonable. Although the existence vel non of probable cause is arguable — we regard that question as very close, but see no need to decide it definitively — it simply cannot be said, on this record, that probable cause clearly was lacking at the time of the arrest.  See

---

[2]Although the appellant told Hainey that he had never shared the pills with his son or anyone else and that he had mentioned to a pharmacist that some of his pills might be missing, Hainey had no obligation to give credence to these self-serving statements.  A reasonable police officer is not required to credit a suspect's story.  See Brady v. Dill, 187 F.3d 104, 112 (1st Cir. 1999); Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988); see also Acosta, 386 F.3d at 11 (noting that police have no responsibility to investigate potential defenses before making a probable cause determination).

<u>Topp</u> v. <u>Wolkowski</u>, 994 F.2d 45, 48 (1st Cir. 1993).  Qualified immunity therefore attaches.

The appellant resists this conclusion on four grounds. We find none of them persuasive.

The appellant's first line of attack is that the search yielded no evidence that he had furnished Roxicodone to his minor son.  This ignores the fact that police officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."  <u>United States</u> v. <u>Arvizu</u>, 534 U.S. 266, 273 (2002).  While Hainey lacked direct evidence as to how Joseph Cox procured the four Roxicodone tablets sold to the informant and the two discovered in his bedroom, the totality of the circumstances supported a plausible inference that he obtained them from his father.

To be sure, alternative inferences could have been derived from the evidence available to Hainey.  But the availability of alternative inferences does not prevent a finding of probable cause so long as the inference upon which the officer relies is reasonable.  As we have said, "[t]he probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable . . . .  [It] need only be reasonable." <u>United States</u> v. <u>Winchenbach</u>, 197 F.3d 548, 555-56 (1st Cir. 1999). Consequently, when conflicting inferences are available to resolve

-15-

the issue of probable cause and both of them are plausible, "it does not matter which inference is correct." Acosta, 386 F.3d at 9.

The appellant's second demurrer takes issue with the use of marijuana-related evidence to support the conclusion that he was involved in furnishing Roxicodone to his minor son. The appellant asserts that consideration of this evidence impermissibly reduced the probable cause requirement to a standard compatible with arrest for a lesser violation.

To put this assertion in perspective, it is important to understand that Hainey has not argued that the evidence at least supported probable cause to arrest for a marijuana violation. See Cox, 324 F. Supp. 2d at 131 n.3. While a "related crimes" defense might have been available to Hainey, see, e.g., Sheehy v. Town of Plymouth, 191 F.3d 15, 19-20 (1st Cir. 1999) (outlining the parameters of this defense), the absence of any argument to that effect makes this a non-issue. See Santiago v. Fenton, 891 F.2d 373, 387 (1st Cir. 1989). Here, then, Hainey must be held to the requirement of arguable probable cause with respect to the crime for which he actually arrested the appellant, namely, a violation of Me. Rev. Stat. Ann. tit. 17-A, §§ 1105-C(1)(A)(1), 1106.

This does not mean, however, that the marijuana-related evidence has no bearing on the decisional calculus. Joseph's comments about the drug run and his ability to obtain marijuana

-16-

from his father are part of the totality of the circumstances.  So too is the presence of the scale.  These pieces of evidence tend to make more plausible the trooper's inference about the appellant's role in the furnishing of Roxicodone.  Cf. Brinegar v. United States, 338 U.S. 160, 175 (1949) (observing that the inferred probabilities undergirding probable cause "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act").  Thus, we reject the appellant's suggestion that this evidence should have been excluded from the probable cause determination.

The appellant next argues that the foundation for Hainey's probable cause determination was inadequate because he had no evidence that the appellant possessed the mens rea required to commit the charged crime.  This sally takes us to the language of the relevant statutes.  The Maine Criminal Code provides in pertinent part that "a person is guilty of unlawful furnishing of a scheduled drug if the person intentionally or knowingly furnishes what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug."  Me. Rev. Stat. Ann. tit. 17-A, § 1106(1-A).  A companion statute renders that crime aggravated if "[t]he person furnishes a scheduled drug to a child who is in fact less than 18 years of age and the drug is . . . [a] schedule W

drug." Id. § 1105-C(1)(A).[3] The Code sheds light on the meaning of the mens rea components needed for commission of these crimes. "A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result." Id. § 35(1)(A). By like token, "[a] person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result." Id. § 35(2)(A).

Given these guideposts and the information available to Hainey at the time of the arrest, we do not believe it should have been apparent to him that the mens rea component was altogether lacking. On this record, an objectively reasonable officer could have believed that there was probable cause to support an arrest for aggravated furnishing based on circumstantial evidence that the appellant's actions were intentional (because Joseph's statement about his ability to procure marijuana from his father, made in the course of a Roxicodone transaction, tended to suggest that the appellant was consciously abetting his son's drug-trafficking activities). Although this inference is somewhat attenuated, the practical restraints on police in the field are greater with respect to ascertaining intent and, therefore, the latitude accorded to officers considering the probable cause issue in the

---

[3]In this case, no one disputes that Roxicodone is and was a schedule W drug under Maine law.

context of mens rea crimes must be correspondingly great. See Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000) (emphasizing that police must make judgment calls in determining a suspect's state of mind).

That brings us to the appellant's final objection to the lower court's qualified immunity ruling. This objection calumnizes the court's consideration of Hainey's consultation with the assistant district attorney (who, upon reviewing the evidence that Hainey presented to him, opined that it satisfied the probable cause requirement). In mounting this objection, the appellant submits that a police officer should not be able to insulate himself from liability for an erroneous determination simply because he obtained a prosecutor's blessing to arrest upon evidence that did not establish probable cause.

We agree with the appellant's premise that a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one. That is not to say, however, that a reviewing court must throw out the baby with the bath water. There is a middle ground: the fact of the consultation and the purport of the advice obtained should be factored into the totality of the circumstances and considered in determining the officer's entitlement to qualified immunity.

Whether advice obtained from a prosecutor prior to making an arrest fits into the totality of circumstances that

-19-

appropriately inform the qualified immunity determination is a question of first impression in this circuit.  In Suboh v. Dist. Atty's Office of Suffolk Dist., 298 F.3d 81 (1st Cir. 2002), we noted the question but had no occasion to answer it.  See id. at 97.  In dictum, we implied that if an officer seeks counsel from a prosecutor anent the legality of an intended action and furnishes the latter the known information material to that decision, the officer's reliance on emergent advice might be relevant, for qualified immunity purposes, to the reasonableness of his later conduct.  See id.

Other courts, however, have spoken authoritatively to the issue.  The Seventh Circuit recently recognized that pre-arrest consultation with a prosecutor may lend reasonableness to an officer's conclusion that probable cause exists and, thus, may help to establish qualified immunity.  Kijonka v. Seitzinger, 363 F.3d 645, 648 (7th Cir. 2004).  Similarly, the Eighth Circuit has held that such advice can assist in "show[ing] the reasonableness of the action taken" and, thus, assist in determining the existence vel non of qualified immunity.  E-Z Mart Stores, Inc. v. Kirksey, 885 F.2d 476, 478 (8th Cir. 1989).  The Ninth and Fourth Circuits also have recognized that a pre-seizure consultation with a prosecutor is a factor to be considered in determining an officer's entitlement to qualified immunity.  See Dixon v. Wallowa County, 336 F.3d 1013, 1019 (9th Cir. 2003); Wadkins v. Arnold, 214 F.3d

535, 542 (4th Cir. 2000). The Tenth Circuit has substantially adopted this reasoning, acknowledging the relevance of a prosecutor's advice for qualified immunity purposes, at least where the officer's duty is unclear. See Lavicky v. Burnett, 758 F.2d 468, 476 (10th Cir. 1985).

We agree with our sister circuits and with the implication of the Suboh dictum that there is some room in the qualified immunity calculus for considering both the fact of a pre-arrest consultation and the purport of the advice received. As a matter of practice, the incorporation of these factors into the totality of the circumstances is consistent with an inquiry into the objective legal reasonableness of an officer's belief that probable cause supported an arrest. It stands to reason that if an officer makes a full presentation of the known facts to a competent prosecutor and receives a green light, the officer would have stronger reason to believe that probable cause existed. And as a matter of policy, it makes eminently good sense, when time and circumstances permit, to encourage officers to obtain an informed opinion before charging ahead and making an arrest in uncertain circumstances. See Kijonka, 363 F.3d at 648. Although we acknowledge the possibility of collusion between police and

prosecutors, we do not believe that possibility warrants a general rule foreclosing reliance on a prosecutor's advice.[4]

We caution, however, that the mere fact that an officer secures a favorable pre-arrest opinion from a friendly prosecutor does not automatically guarantee that qualified immunity will follow. Rather, that consultation comprises only one factor, among many, that enters into the totality of the circumstances relevant to the qualified immunity analysis. See Wadkins, 214 F.3d at 542. The primary focus continues to be the evidence about the suspect and the suspected crime that is within the officer's ken.

In considering the relevance of an officer's pre-arrest consultation with a prosecutor, a reviewing court must determine whether the officer's reliance on the prosecutor's advice was objectively reasonable.[5] Reliance would not satisfy this standard

---

[4]Of course, prosecutors work hand in glove with law enforcement officers, so a prosecutor's advice, under the best of circumstances, cannot carry the same presumption of reliability that accompanies the detached scrutiny of a neutral magistrate. See United States v. Leon, 468 U.S. 897, 913-14 (1984). But that lessened deference is no reason to treat a prosecutor's counsel as worthless. Prosecutors are public officials and officers of the court. Moreover, when giving legal advice to the police, they have only qualified immunity. Burns v. Reed, 500 U.S. 478, 496 (1991). "[T]he absence of absolute immunity for the act of giving legal advice may cause prosecutors to consider their advice more carefully . . . ." Id. at 495. In view of these realities, we refuse to endorse a rule that a prosecutor's stake in law enforcement renders his or her advice inherently unreliable.

[5]This inquiry remains focused on objective reasonableness and should not be transformed into an investigation of the officer's

if an objectively reasonable officer would have cause to believe that the prosecutor's advice was flawed, off point, or otherwise untrustworthy.  Cf. Groh v. Ramirez, 124 S. Ct. 1284, 1293-94 (2004) (holding that qualified immunity could not shield an officer from liability for actions predicated upon an obviously deficient arrest warrant).  Law enforcement officers have an independent duty to exercise their professional judgment and can be brought to book for objectively unreasonable mistakes regardless of whether another government official (say, a prosecutor or a magistrate) happens to compound the error.  See Malley, 475 U.S. at 340-41.

The officer's own role is also pertinent.  If he knowingly withholds material facts from the prosecutor, his reliance on the latter's opinion would not be reasonable.  Dixon, 336 F.3d at 1019; Hollingsworth v. Hill, 110 F.3d 733, 741 (10th Cir. 1997).

In this case, the advice that Hainey received from the assistant district attorney was of the kind that an objectively reasonable officer would be free to consider reliable.  The undisputed facts indicate that the two reviewed the available evidence fully and had a frank discussion about it.  This discussion culminated in the prosecutor's statement that he

subjective good faith.  See Crawford-El v. Britton, 523 U.S. 574, 587-88 (1998); Tremblay v. McClellan, 350 F.3d 195, 199 (1st Cir. 2003).  Whether a pre-arrest consultation actually boosted the officer's confidence in his or her probable cause determination is beside the point.

believed Hainey had probable cause to arrest the appellant. And, finally, there is nothing to suggest that the prosecutor was operating in bad faith. We conclude, therefore, that an objectively reasonable officer would have taken the prosecutor's opinion into account in deciding whether to make the arrest. Thus, the district court appropriately considered that opinion in assessing the objective reasonableness of Hainey's actions and, ultimately, in granting him qualified immunity.

## III. CONCLUSION

We need go no further. We conclude that an objectively reasonable officer, standing in Hainey's shoes, could have believed that probable cause existed to arrest the appellant for the crime of aggravated furnishing of a schedule W drug. Accordingly, the district court did not err in ruling that Hainey was entitled to qualified immunity with respect to the appellant's claim under section 1983.

**Affirmed**.