# United States Court of Appeals

## For the First Circuit

No. 10-1437

JAMES MCINNIS SR., ET AL,

Plaintiffs, Appellants,

v.

STATE OF MAINE, ET AL,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

---

William Maselli was on brief, for the appellant.
Janet T. Mills, Attorney General, with whom William R. Fisher, Assistant Attorney General, Peter T. Marchesi, and Cassandra S. Shaffer, were on brief, for the appellee.

---

March 7, 2011

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  Plaintiff James McInnis was convicted of both federal and state offenses, and sentenced to a period of probation on the state charge, set to begin at the conclusion of the term of his state incarceration.  On January 5, 2007, during what McInnis's probation officer believed to be the probation period, he authorized McInnis's warrantless arrest for violating probation and a warrantless search for drugs suspected to be in his possession.  Actually, the probation period had expired before the search and arrest, apparently because the original sentence had been reduced unbeknownst to the state probation department.

This is an appeal from summary judgment in ensuing actions brought by McInnis and the other plaintiffs under 42 U.S.C. § 1983 and state tort law against the State of Maine, York County and a series of state and county officers and their superiors, who made the warrantless search and arrest.  McInnis argues that findings of qualified immunity erroneously deprived him of his right to press his claims of false arrest and illegal search, and he says that the trial court failed to recognize the adequacy of a negative records claim, as well as a genuine fact issue said to affect the application of a statutory limitation on tort liability of a state officer.  We affirm.

In 2006, after McInnis was released from his earlier custody on completion of his sentence, he spoke by phone with a state

probation officer, Lew Randall, who told McInnis to report to him in accordance with the probation terms. McInnis responded (correctly as it turns out) that he was not on probation at that point and said that he would have his lawyer explain his status to Randall. This was not done, though for his part Randall took no immediate action against McInnis until he got a call from the defendant Kenneth Hatch, a Lincoln County deputy sheriff, who is McInnis's half-brother (and is said to have been the victim of McInnis's state criminal offense).

Hatch said that he had spoken with an informant who had previously given information that had never been subject to question and who was known to be acquainted with McInnis. According to the informant, McInnis and his son had "ripped off" someone of twenty-five pounds of marijuana, which was then in McInnis's possession at the dwelling of the plaintiff Dee McInnis. Randall confirmed (as he believed) that McInnis was on probation. Hatch had his supervisor's approval to pass the information along to other law enforcement officials as was customary, Randall being the first he called. Hatch also called defendant William Deetjen, an officer of the Maine Drug Enforcement Administration. Deetjen contacted Randall, who gave him authority both to arrest McInnis for violating probation and to search for the drugs, in each instance without a warrant, which the standard probation conditions made unnecessary. Deetjen himself knew that a federal judge had

recently revoked an order authorizing McInnis's supervised release because he had lied to a federal probation officer, failed to report to him, and possessed marijuana.

When Deetjen and several other defendant state officers went to the McInnis house, McInnis claimed that he was not on probation. Deetjen called Randall, who repeated that he was. The officers then arrested him for violating probation and searched the premises for the stolen marijuana, though finding only some marijuana seeds and drug paraphernalia.[1]

It was only after the arrest on January 5, 2007, while McInnis was in custody at the York County jail, that his lawyer spoke with Randall and explained a sentence reduction resulting in a correspondingly earlier conclusion to the probation term. The sentence change had never been entered in the probation department's records (for whatever reason), and once Randall learned the new facts he concluded that McInnis was not on probation and withdrew the "hold" (or arrest and custody) authorization he had earlier given to the law enforcement officers.[2]

---

[1]The informant's report to Hatch later proved to be erroneous.

[2]McInnis claims that there was a prior instance of records error in the Probation Department, but this is not shown in the factual record before the court and, in any event, is not claimed to have been known to Randall or the state officers who made the arrest and search. McInnis also claims that he was kept in jail for two days after the error was known, but there is no dispute about the magistrate judge's notation that the complaint makes no

We review a grant of summary judgment de novo and draw all reasonable inferences in favor of McInnis. Cox v. Hainey, 391 F.3d 25, 28-29 (1st Cir. 2004) The judgments in favor of the government officers on the ground of qualified immunity rest on the rule that an official is not subject to civil damages under § 1983 if the action complained of did not violate a clearly established right to which a reasonable officer would have understood that the plaintiff was entitled. Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The issue in this case has nothing to do with the law component of that rule; the general standards of reasonable search and seizure are not in contention, nor is the rule that violating a condition of probation is cause for arrest, or the rule that a condition of probation may dispense with the need for a warrant to arrest or search a probationer.[3] See Katz v. United States, 389 U.S. 347, 356-357 (1967); United States v. Cardona, 903 F.2d 60, 60, 64 (1st Cir. 1990); Griffin v. Wisconsin, 483 U.S. 868, 873-875 (1987).

Thus, liability for McInnis's arrest turns entirely on the fact element of the qualified immunity standard, on whether the arresting officer could reasonably have believed that McInnis was violating probation. As to this, the probation officer's

such claim.

[3]McInnis suggests that Maine law requires a warrant to arrest for violating probation, but that is only when the whereabouts of the offender are unknown. 17-A M.R.S. § 1205(1). McInnis was found right where he was understood to be.

representation was surely sufficient in and of itself, though in this case there was more. Randall confirmed the probation status when Deetjen prudently called him after McInnis denied it, and Deetjen had dealt with Randall for thirty years without any indication of shoddiness that might have discounted the reliability of Randall's word. As we explain more fully below, there was no genuine dispute as to these facts, which provided the officers with probable cause to believe McInnis was subject to arrest for violating the terms of a valid probation order, and they thus obviously qualified under the standard recognizing immunity "so long as the presence of probable cause is at least arguable." Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991).

Belief in sufficient grounds to search was likewise "at least arguable." Here, given good reason to believe that McInnis was on probation, the standard to be met was one of reasonable suspicion that contraband would be found where he lived. See United States v. Knights, 534 U.S. 112, 121 (2001). Reasonable suspicion was supplied by the informant, whose past reports had given no cause for skepticism, and underscored by the known previous revocation of McInnis's federal supervised release on account of possessing marijuana, among other things.[4] The informant's reliability was

---

[4]Because there was probable cause for the officers at the scene to arrest, and reasonable suspicion to search, there is no basis for liability on the part of the primary officers, supervisors, or a claim against York County under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978).

indicated by that track-record, which also answers McInnis's attempt to raise a genuine issue of material fact underlying his argument that the officers should have taken steps to verify the informant's report before acting on it.

Two subsidiary matters are left. McInnis wished to contest the defendants' statements of material fact (in their summary judgement pleadings), to the effect that Deetjen twice conversed with Randall, who each time said that McInnis was on probation. McInnis's response to each of those statements was to say this: "Qualified. Mr. McInnis takes the position that conversation not recorded by Mr. Randall did not occur. Mr. McInnis asserts that his is a legitimate inference to be made in his favor on a motion for summary judgment." The magistrate held these responses insufficient to raise a fact dispute because McInnis failed to support the claimed qualification with a citation to the record, as required by the District of Maine's Local Rule 56(c). McInnis now suggests that the citation requirement is inapt by force of Federal Rule of Evidence 803(7), which he treats as entitling him to rely on the very absence of a record as a basis for disputing a fact claim. That rule exempts from the evidentiary hearsay bar evidence that an alleged event is not recorded as a means of proving it never occurred. McInnis assumes that without more he should be able to rely on Randall's telephone notes containing no mention of the Deetjen conversations (Randall having died). The argument

- 7 -

comes up short in a number of ways, the first being that McInnis never brought it to the district court's attention. But even on its own terms it goes nowhere, since McInnis provides no grounds for applying the Rule even if he were offering the phone notes in evidence. Rule 803(7) conditions admissibility on a foundational showing that records were kept in such a way that the occurrence claimed "was of a kind of which a . . . record . . . was regularly made and preserved." McInnis attempts no such showing.

Finally, McInnis says it was error to enter judgment against him on his state tort claims against Hatch, despite his failure to satisfy the requirement of the Maine Tort Claims Act that a notice of a claim against a government employee be given within 180 days of accrual. Hatch, he says, was not acting within the scope of his employment when he called Randall and Deetjen, from which it may be shown that he was acting maliciously and outside the protection of the statute. See 14 M.R.S.A. § 8107. But as McInnis recognizes, an employee's action is within the scope of his duties when "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." Spencer v. V.I.P., Inc., 910 A.2d 366, 367 (Me. 2006)(alteration in original)(quoting Restatement (Second) of Agency (1958)). The record before us indicates without contradiction that as a detective and sheriff's deputy, Hatch was

regularly in contact with informants, including the one in question, and that he customarily shared information with other law enforcement agencies.  He relayed the informant's report with his supervisor's knowledge, during his working hours, and there is no question that sharing such information serves the enforcement of the state's criminal law.[5]  There was consequently no issue of fact standing in the way of Hatch's entitlement to judgement on the tort claim due to McInnis's failure to give the notice required by statute.

**Affirmed.**

---

[5]As mentioned, McInnis argues in his brief that Hatch should have taken some steps to confirm the informant's unsound report before passing it along.  But even the suggested negligence would not have placed him outside the scope of this employment, and his undisputed prior experience with the informant answers the suggestion.