UNITED STATES of America,

v.

Jeffrey Paul BARNARD, Defendant.

No. 01–CR–41–BS.

United States District Court,
D. Maine.

Nov. 14, 2001.

Marvin H. Glazier, Vafiades, Brountas & Kominsky, Bangor, ME, for Jeffrey Paul Barnard.

Gail Fisk Malone, U.S. Attorney's Office, Bangor, ME, for U.S.

## ORDER AND MEMORANDUM OF DECISION

SINGAL, District Judge.

Presently before the Court is Defendant's motion to suppress evidence obtained in a search of his home (Docket # 11). For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

On December 1, 2000, Detective John Glidden of the Millinocket Police Department obtained a warrant to search Jeffrey Paul Barnard's residence in Millinocket, Maine. The affidavit in support of the warrant provided three basic pieces of information. The first two were reports Detective Glidden received from other law enforcement personnel. First, in a conversation on July 27, 2000, Probation Officer Paul Kelly conveyed information from a "very reliable source" that Mr. Barnard kept a .22 caliber rifle and perhaps another firearm at his residence. (Aff. in Supp. of Warrant (Docket # 11, Attach.).) Second, on November 30, 2000, Sergeant Donald Bolduc passed along information from "a confidential informant" whom Sergeant Bolduc "believe[d] to be reliable," who reported having seen an SKS assault rifle and a .22 caliber rifle at Mr. Barnard's home on November 13 or 14. (Aff. in Supp. of Warrant (Docket # 11, Attach.).) The informant claimed that Mr. Barnard

had threatened him or her and other people with the SKS assault rifle and that Mr. Barnard kept the weapon beside his bed while he slept. According to the informant, Mr. Barnard had purchased the assault rifle about four months earlier from another resident of Millinocket named in the affidavit. Finally, the informant reported that Mr. Barnard was a felon. According to Sergeant Bolduc, the informant was working with the Millinocket Police Department for "no consideration." (Aff. in Supp. of Warrant (Docket # 11, Attach.).)

The third piece of information in the affidavit was the result of a criminal record check that Detective Glidden ran on Mr. Barnard. The check revealed six prior convictions, four of which were for possession of a firearm by a felon.

On December 3, 2000, police personnel executed the warrant and searched Mr. Barnard's home. As a result of the search, three firearms apparently were discovered in Defendant's possession, including a .22 caliber rifle and an SKS semi-automatic rifle. On August 7, 2001, Mr. Barnard was indicted on one count of possession of firearms by a felon in violation of 18 U.S.C. § 922(g)(1). On September 28, 2001, Mr. Barnard moved to suppress the evidence obtained in the search because the warrant was not supported by probable cause.

## II. STANDARD OF REVIEW

In determining whether to issue a search warrant, a magistrate must determine whether " 'the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it.' " *United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir.1996) (quoting *United States v.*

*Aguirre,* 839 F.2d 854, 857–58 (1st Cir. 1988)). The magistrate is limited to the facts set forth in the supporting affidavits and must assess whether probable cause exists based on the "totality of the circumstances" demonstrated by those facts. *United States v. Zayas–Diaz,* 95 F.3d 105, 111 (1st Cir.1996) (citing *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

■ On later review, a trial court must accord "great deference" to a magistrate's probable cause determination. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317; *Zayas–Diaz,* 95 F.3d at 111. A reviewing court should only reverse the magistrate's determination if it finds that there was no "substantial basis" for the finding of probable cause. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317.

## III. DISCUSSION

Defendant argues that the affidavit in support of the warrant established no substantial basis for the magistrate's determination that there was probable cause to believe that a search of his home would turn up evidence of a crime. He challenges the sufficiency of the affidavit on the alternative bases that (1) it did not provide enough information to establish that either informant's report was credible, and (2) the information supplied by the officers was stale by the time Detective Glidden sought the search warrant.[1]

■ When an affidavit relies on the reports of unnamed informants, it must include some information by which a neutral magistrate can assess the credibility of the information those informants provide. *See United States v. Capozzi,* 91 F.Supp.2d 423, 431 (D.Mass.2000) (citing *Gates,* 462 U.S. at 227, 103 S.Ct. 2317). The informant's "veracity," "reliability," and "basis

of knowledge" are all relevant to determining whether a tip is an adequate basis for a finding of probable cause. *United States v. Khounsavanh,* 113 F.3d 279, 284 (1st Cir.1997) (citing *Gates,* 462 U.S. at 230, 103 S.Ct. 2317). The government insists that the affidavit contained several pieces of information from which a magistrate could conclude that the tips in this case were credible.

### A. Officers' Assessment of Informants' Reliability

■ The government argues that the fact that both of the officers vouched for the reliability of their informants provides some evidence that the reports were credible. Mr. Kelly described his informant as "very reliable," and Sergeant Bolduc also "believe[d] [his informant] to be reliable." However, an officer's assessment of an informant's reliability does not by itself provide an adequate basis for a finding of probable cause. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317; *United States v. Taylor,* 985 F.2d 3, 5 (1st Cir.1993). Rather than simply asserting that an informant is reliable, an affiant should, if possible, present examples of past profitable tips that the informant has provided. *See United States v. Jewell,* 60 F.3d 20, 22 (1st Cir. 1995) (approving an affidavit that contained specific examples of prior reliable information the informant had provided); *United States v. Cochrane,* 896 F.2d 635, 641 (1st Cir.1990) (same); *United States v. Asselin,* 775 F.2d 445, 446 (1st Cir.1985) (same). This information allows a magistrate to make an independent determination instead of simply rubber-stamping the conclusions of those seeking the affidavit. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317.

---

1. For purposes of grammatical consistency, this opinion describes the "informants" in the plural. As discussed below, however, it is not clear from the affidavit whether there were one or two informants.

Here, the magistrate had no such opportunity. The officers' "bald assertion[s]" that the informants were reliable are " 'entitled to only slight weight,' " *Khounsavanh,* 113 F.3d at 286 (quoting *United States v. Foree,* 43 F.3d 1572, 1576 (11th Cir.1995)), and the affidavit offered no information about the informants other than their asserted reliability.

**B. Informants' Firsthand Knowledge of Detailed Information**

■ Alternatively, an informant's statement may be "self-authenticating" if it is based on the informant's direct knowledge and is sufficiently detailed as to suggest its veracity. *Taylor,* 985 F.2d at 6. Ordinarily, a tip of this nature involves extensive and internally consistent details that would be difficult to fabricate without accurate knowledge of the alleged illegal activity. *See, e.g., Gates,* 462 U.S. at 245, 103 S.Ct. 2317 (noting that a tipster's accurate prediction of the suspects' future behavior included dates, methods of travel, and unusual arrangements for a return trip); *Taylor,* 985 F.2d at 6 (noting that the informant provided a corroborated, detailed description of the interior and exterior of the premises to be searched, including the number and location of 400 to 500 marijuana seedlings).

■ The government correctly points out that Sergeant Bolduc's informant provided some details about the Defendant's activities, such as the make of two weapons the Defendant allegedly possessed, the approximate date the Defendant purchased one of them, the name of the seller, and the Defendant's habit of keeping one of the weapons by his bed when he slept. The informant also claimed to have been in the Defendant's home and seen the two weapons personally. However, this level of detail is not sufficiently extensive in itself to establish the authenticity of the tip. A report that a person purchased specific weapons from a named individual and keeps one of them near his bed when he sleeps is not detailed enough to substantially reduce the likelihood that the tip is a fabrication. *See United States v. Bryant,* 951 F.Supp. 674, 679 (E.D.Mich. 1997) ("[T]he statement that the affiant in this case had observed Defendant 'in possession of a .380 caliber handgun and a 9 mm handgun at his home' is lacking in relevant detail.")

**C. Corroboration**

Moreover, even in those cases in which a court suggested that the extensive detail itself provided some verification of the tip, in actuality, law enforcement officials were also able to corroborate some significant portion of the information. *See Gates,* 462 U.S. at 245, 103 S.Ct. 2317; *United States v. Scott,* 83 F.Supp.2d 187, 194 (D.Mass. 2000), *aff'd* 270 F.3d 30 (1st Cir. Oct.30, 2001). In fact, "[a]bsent information about a tipster's reliability or basis for obtaining her information, some corroboration is *required.*" *Capozzi,* 91 F.Supp.2d at 431 (emphasis added). *See Khounsavanh,* 113 F.3d at 284. The determinative question is whether the details that the receiver of the tip was able to verify "make it sufficiently likely that the crucial part of the informant's story . . . is true." *Id.*

The only independently corroborated detail in the affidavit was Sergeant Bolduc's informant's statement that Mr. Barnard was a felon. Corroboration of a single piece of information that is publicly available is insufficient to "demonstrate that the informant has a legitimate basis for knowing about the defendant's allegedly criminal activity." *Khounsavanh,* 113 F.3d at 284. *Accord Bryant,* 951 F.Supp. at 678 ("[M]erely verifying public information such as addresses . . . and criminal records is not sufficient to corroborate an informant's statement.").

## D. Cross–Corroboration

When an affidavit reflects information provided by more than one informant, the separate reports, if consistent, may serve to corroborate each other. *Schaefer*, 87 F.3d at 566. The government here contends that the information provided to Mr. Kelly by his informant corroborates the report of Sergeant Bolduc's informant.

The defect in this argument is that the affidavit provides so little information about either informant that it is impossible to determine whether the two informants are actually different people. The affidavit states simply that someone reported to Mr. Kelly that the Defendant possessed a .22 caliber rifle and another weapon and that four months later, someone reported to Sergeant Bolduc that the Defendant possessed a .22 caliber rifle and an SKS assault rifle. Absent any shred of information that could indicate to the magistrate that they were, in fact, different people, the two reports cannot be used to corroborate each other.

## E. Defendant's Criminal Record

 Finally, in assessing whether probable cause exists to believe that a search of an individual's home will reveal evidence of a particular crime, a magistrate may consider the individual's known prior criminal conduct. *See Taylor*, 985 F.2d at 6; *Asselin*, 775 F.2d at 446. Here, the affidavit indicated that the Defendant had been convicted four times previously of being a felon in possession of a firearm. This information was relevant in determining whether it was probable that he possessed a firearm in his home at the time the warrant issued. Considered alone, however, evidence of a prior criminal record is insufficient to justify a search of an individual's home. *Cf. Beck v. Ohio*, 379 U.S. 89, 96–97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (holding that knowledge of either the defendant's appearance or his past criminal record, or both, did not constitute probable cause to arrest).

## F. Totality of the Evidence in the Affidavit

Although none of the factors individually establishes the credibility of the tip, the Court is required to review the magistrate's finding of probable cause based on the affidavit as a whole. *Zayas–Diaz*, 95 F.3d at 111. In this case, however, the whole is no more convincing than the individual parts. If a single informant knew *only* about the Defendant's criminal record, he or she could have contacted two law enforcement officers and generated the remainder of the information in the affidavit with very little imagination. The warrant process is designed in part to prevent searches based on fabricated or inaccurate information. The affidavit in this case did not provide enough information for a neutral magistrate to determine independently whether the informants' reports were authentic or invented. Therefore, there was no "substantial basis" for the magistrate's determination that probable cause existed to justify a search of the Defendant's residence.

The government makes no other argument to salvage the fruits of the search authorized by this warrant. In the absence of any other argument, the exclusionary rule requires that the results of the unlawful search be suppressed. *United States v. Brunette*, 256 F.3d 14, 19 (1st Cir.2001) (citing *Weeks v. United States*, 232 U.S. 383, 391–93, 34 S.Ct. 341, 58 L.Ed. 652 (1914)). Because the Court finds that suppression is warranted based on the above discussion, it does not reach the Defendant's arguments that both informants' reports were stale.

## IV. CONCLUSION

Defendant's Motion to Suppress is GRANTED. Evidence obtained as a re-

sult of the search of Defendant's home on December 3, 2000, is SUPPRESSED.

SO ORDERED.