# United States Court of Appeals
## For the First Circuit

————————————

No. 01-2762

UNITED STATES OF AMERICA,

Appellant,

v.

JEFFREY P. BARNARD,

Defendant - Appellee.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

————————————

Before

Torruella and Lipez, Circuit Judges,

and Schwarzer,* Senior U.S. District Judge

————————————

F. Mark Terison, Assistant U. S. Attorney, and Paula D. Silsby, United States Attorney, appear on brief for appellant. Marvin H. Glazier on brief for appellee.

————————

August 14, 2002

————————

_____

*Of the Northern District of California, sitting by designation.

**SCHWARZER, <u>Senior District Judge</u>**.  Defendant Jeffrey P. Barnard was charged in a single-count indictment with being a felon-in-possession of firearms, in violation of 18 U.S.C. § 922(g)(1).  He moved to suppress evidence of firearms seized in a warrant search, contending that the warrant lacked sufficient information to support a finding of probable cause.  The district court granted the motion on the papers without hearing.  <u>United States</u> v. <u>Barnard</u>, 172 F. Supp. 2d 207 (D. Me. 2001).  Following entry of the suppression order, the government sought reconsideration, arguing the applicability of the good faith exception under <u>United States</u> v. <u>Leon</u>, 468 U.S. 897 (1984).  The court denied the motion, and the government timely appealed.  We have jurisdiction pursuant to 18 U.S.C. § 3731 and now reverse.

### FACTUAL BACKGROUND

On December 1, 2000, Detective John Glidden of the Millinocket Police Department obtained a warrant to search defendant's residence in Millinocket, Maine.  The supporting affidavit provided the following information.

Detective Glidden received two reports from other law enforcement personnel. First, in a conversation on July 27, 2000, Probation Officer Paul Kelly conveyed information from a "very reliable" source ("source") that defendant owns a .22 caliber rifle and may also have another firearm at his 22 Kelly Lane residence and that if police went to defendant's residence there would be a

shooting. Second, on November 30, 2000, Sergeant Donald Bolduc passed along information from a confidential informant ("CI") whom Bolduc believed to be "reliable" and who was working with the Millinocket Police Department for no consideration. The CI reported having seen an SKS assault rifle and a .22 caliber rifle the last time he was at defendant's home on November 13 or 14, 2000. The CI stated that defendant had purchased the SKS approximately four months earlier from Jason Hartley, a resident of Millinocket. He further stated that defendant had threatened people, including him, with the SKS and that defendant kept the weapon beside his bed while he slept. Finally, the CI stated that defendant was a felon.

The affidavit further stated that on November 30, 2000, Detective Glidden ran a criminal records check on defendant that showed four prior convictions for possessing a firearm after being convicted of a felony, all within five years preceding the search.

Finally, Detective Glidden stated that he had been a police officer for eleven years during which time he had written many search warrants and investigated several cases involving illegal possession of firearms. In his experience, people who own firearms usually kept them at their residence.

A justice of the peace ("issuing justice") issued the search warrant, and police personnel executed it on December 3, 2000. The search apparently yielded three firearms in defendant's

-3-

possession, including a .22 caliber rifle and an SKS assault rifle.

**DISCUSSION**

A.  *Standard of Review*

We review <u>de</u> <u>novo</u> the district court's "ultimate determination of whether a given set of facts constituted 'probable cause.'" <u>United States</u> v. <u>Zayas-Diaz</u>, 95 F.3d 105, 111 n.6 (1st Cir. 1996).  Any factual findings made by the district court are reviewed for clear error.  <u>Id.</u>  In determining the sufficiency of an affidavit, we consider whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search the premises.  <u>United States</u> v. <u>Khounsavanh</u>, 113 F.3d 279, 283 (1st Cir. 1997).  We examine the affidavit in "a practical, common-sense fashion" and accord "considerable deference to reasonable inferences the [issuing justice] may have drawn from the attested facts."  <u>Zayas-Diaz</u>, 95 F.3d at 111 (internal quotations omitted).  "Under the 'probable cause' standard, the 'totality of the circumstances' disclosed in the supporting affidavits must demonstrate '<u>a fair probability</u> that contraband or evidence of a crime will be found in a particular place.'" <u>Id.</u>, (quoting <u>Illinois</u> v. <u>Gates</u>, 462 U.S. 213, 238 (1983)).  In a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause.  <u>Id.</u>

B.  *Analysis*

Where an affidavit relies on the reports of unnamed

informants, it must provide some information upon which the issuing justice can assess the credibility of the informant's information. We have adopted a nonexhaustive list of factors that a reviewing court will consider in a probable cause determination based on information from an informant. These include:

> whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether informant statements are self-authenticating; whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable . . .; and whether a law enforcement affiant included a professional assessment of the probable significance of the facts related by the informant based on experience or expertise.

Khounsavanh, 113 F.3d at 284 (internal quotations omitted); see also Zayas-Diaz, 95 F.3d at 111. "None of the factors is indispensable; thus, stronger evidence on one or more factors may compensate for a weaker or deficient show on another." Zayas-Diaz, 95 F.3d at 111.

### 1. Law enforcement's assertions of reliability

We turn first to Sergeant Bolduc's assertion that he believed the CI to be "reliable." A mere assertion of reliability without any information regarding the basis for the officer's belief, such as past tips leading to arrests, is entitled to only "slight" weight. Khounsavanh, 113 F.3d at 286. However, Bolduc not only gave his estimate of the CI's reliability but backed it up with information that the CI was working for the department for no

-5-

consideration.  This information at least provided some assurance of reliability.  Unlike an anonymous tipster, the CI was known to the police and could be held responsible if his assertions proved inaccurate or false.  Florida v. J.L., 529 U.S. 266, 270 (2000) (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972)).

## 2.  Informant's basis of knowledge

The credibility of an informant is enhanced to the extent he has provided information that indicates first-hand knowledge. See United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) (citing United States v. Caggiano, 899 F.2d 99, 102-03 (1st Cir. 1990) ("reliability of informant enhanced if detailed and derived from informant's personal observation rather than hearsay")); see also Gates, 462 U.S. at 234 (stating that the informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand entitles the tip to greater weight than might otherwise be the case").  Here, the CI stated that he saw the two firearms at defendant's house and identified the types of guns.  He also stated that defendant had threatened him with the SKS.  This first-hand information provided a link between the illegal activity observed and the place to be searched. It demonstrated the CI's knowledge of concealed illegal activity as opposed to easily knowable, nonincriminating facts.  See Khounsavanh, 113 F.3d at 284.  This, in turn, allowed the allegation of illegal activity to be corroborated.  J.L., 529 U.S.

-6-

at 272 (emphasizing that information must be reliable in its assertion of illegality as opposed to nonincriminating facts). These first-hand details provide some assurance of reliability.

There is no indication of personal knowledge for the CI's further statements that (1) defendant had purchased the SKS from Jason Hartley four months previously, (2) defendant slept with the SKS by his bed, and (3) defendant was a felon. While these statements are double hearsay, they need not be disregarded because the information conforms to the CI's first-hand information, which was substantially corroborated. See Gates, 462 U.S. at 244-45 (involving double hearsay) ("It is enough, for the purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." (internal quotations omitted)).

### 3. Corroboration

The affidavit provided two sources of corroboration: Probation Officer Kelly's source's report and Detective Glidden's investigation. We must determine whether the corroboration made it sufficiently likely that the issuing justice could have concluded that the crucial part of the CI's story–that defendant, a felon, was storing at least one firearm at his home–was true. See Khounsavanh, 113 F.3d at 284. We note that the "risk that an informant is lying or in error need not be wholly eliminated." Id.

Instead, we must be confident that the likelihood of lying or an inaccurate informant is sufficiently reduced by corroborated facts and observation. Id.

We first consider the cross-corroboration provided by Probation Officer Kelly's source. The district court rejected the government's contention that the information provided by Kelly's source cross-corroborated the report of Bolduc's CI. The court found that the affidavit provided so little information about either informant that it is impossible to determine whether the two are actually different people, meaning that the two reports could not corroborate each other. Barnard, 172 F. Supp. 2d. at 211.

We disagree. First, the affidavit's description shows that Detective Glidden understood that they were two people. He referred to the probation officer's source as a "reliable source" and "[t]his subject," whereas, he referred to the sergeant's source as "confidential informant" or "CI." Second, the informants approached two different authorities, one a probation officer and the other a police officer, who perform different functions in the criminal justice system and are thus likely to have contact with different individuals. Third, the CI provided information that the source did not supply, namely, that defendant was a felon, that he slept with an SKS assault rifle next to his bed, and that he had threatened people, including the CI, with the SKS. This additional information suggests that the CI was closer to defendant than the

source.  Fourth, both the government and the defense understood the affidavit to refer to two people as evidenced by their papers below.[1]  For these reasons, we conclude that in examining the affidavit in a "practical, common-sense fashion" the issuing justice could reasonably infer the existence of two informants.  See Zayas-Diaz, 95 F.3d at 111; United States v. Garcia, 983 F.2d 1160, 1167 (1st Cir. 1983).

The source's account corroborates the CI's allegation that defendant was in possession of a .22 caliber rifle and possibly another firearm at his residence.  The source also warned that a shooting would occur if police went to defendant's residence.  This information dovetails with the CI's statement that defendant had threatened him and others with the SKS.  As with the CI's report, it is relevant that the source's account identified criminal activity, i.e., defendant's possession of the .22 rifle.

Detective Glidden's criminal background check provided further corroboration.  See Taylor, 985 F.2d at 6.  His investigation corroborated the CI's allegation that defendant was a known felon.  Taken together, the source's account and Detective Glidden's investigation provide substantial corroboration for the CI's crucial allegation of criminal conduct by defendant at his home.  See Khounsavanh, 113 F.3d at 284; see also Taylor, 985 F.2d

---

[1]We note that this issue was raised by the court sua sponte, not having been raised in the briefing to the court.

at 6 (holding that an informant's very detailed and specific account was corroborated where law enforcement simply conducted a criminal background check).

#### 4. Law enforcement's professional assessment

Finally, the issuing justice could credit the law enforcement affiant's experience and pertinent expertise in evaluating the authenticity of the informant's description of the target's modus operandi. Taylor, 985 F.2d at 6; see also United States v. Ortiz, 422 U.S. 891, 897 (1975) ([O]fficers are entitled to draw reasonable inferences from [] facts in light of their knowledge of the area and their prior experience . . . ."). Here, Detective Glidden attested that during his eleven years' service on the force, he had prior experience investigating illegal firearm possession cases that had resulted in the seizure of the firearm and the felon's arrest. Based on his experience, training, and conversations with other experienced officers, Detective Glidden stated that individuals who own guns generally keep them at their residences. In the eyes of the issuing justice, these statements could have boosted the reliability of the CI's information that defendant kept two firearms at his home. See Taylor, 985 F.2d at 6.

### CONCLUSION

We conclude that "[t]aken together, these facts were sufficient to give the [issuing justice] a 'substantial basis' upon

which to conclude that there was a 'fair probability'" that the firearms would be found at defendant's home.  <u>Khounsavanh</u>, 113 F.3d at 286 (citing <u>Gates</u>, 462 U.S. at 238).

**<u>Reversed</u>**.