# United States Court of Appeals
## For the First Circuit

No. 05-2748

IVETTE RIVERA RODRÍGUEZ, GLENDA NERIS RIVERA,

Plaintiffs, Appellants

v.

GREGORY BENINATO, EDWIN LÓPEZ, MIGUEL FALCÓN,
JOHN DOE 04-CV1322, JANE DOE 04-CV1322,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Boudin, Chief Judge
Lynch, Circuit Judge and
Schwarzer,* Senior District Judge

Javier A. Morales Ramos on brief for appellants.
Fidel A. Sevillano Del Rio, Assistant United States Attorney,
H. S. Garcia, United States Attorney, and Miguel A. Fernandez,
Assistant United States Attorney, on brief for appellees.

November 14, 2006

---

*Of the Northern District of California, sitting by designation.

**SCHWARZER, <u>Senior District Judge</u>.** Ivette Rivera Rodríguez and her daughter, Glenda Neris Rivera, appeal the summary judgment dismissing their <u>Bivens</u> action against Gregory Beninato (FBI), Edwin López (FBI), and Miguel Falcón (Puerto Rico Police Department) for alleged violations of their Fourth Amendment rights in the execution of a search warrant. <u>See</u> <u>Bivens</u> v. <u>Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971). The district court held that defendants were entitled to qualified immunity on plaintiffs' constitutional claims and dismissed plaintiffs' related claims. On appeal plaintiffs raise four contentions of error: the invalidity of the search warrant; the insufficient showing of probable cause in the affidavit; the failure of the officers to show the warrant to Ms. Rodríguez before commencing the search; and the unconstitutional timing of the execution of the warrant. Having carefully considered plaintiffs' arguments, we find no error in the district court's disposition and affirm.

**FACTS**

On May 22, 2003, at approximately 5:50 a.m., FBI and other government agents searched the home of Ivette Rivera Rodríguez (Ms. Rodríguez) at Calle Eugenio Maria de Hostos #31 in connection with a May 19th robbery of an armored car. Ms. Rodríguez and her daughter, both barefoot and in nightclothes, were handcuffed and taken outside during the search. In addition to searching the home, the agents, pursuant to another warrant,

seized a white 1998 Mitsubishi Mirage Technica (plate number DBW-680), which had been parked in front of Ms. Rodríguez's residence.

Gregory Beninato (Beninato), who was present at the time of the search, prepared and signed the affidavit which supported the issuance of the warrant to search the Rodríguez home. The affidavit contained, among other things, information from three anonymous sources. A magistrate judge reviewed the affidavit and signed the warrant. The warrant contained no description of the property to be searched for or seized but referred to the "attached affidavit." Ms. Rodríguez requested a copy of the warrant at the outset of the search but the agents declined to give it to her. The district court found that the agents gave her the warrant with an attached list of the items sought following the search.

**STANDARD OF REVIEW**

Summary judgment may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We draw all reasonable inferences from the record in the nonmovant's favor and may base our decision on any rationale, regardless of whether the lower court used the same. Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004).

We review the lower court's probable cause determination de novo, with any factual findings reviewed for clear error. United States v. Zayas-Diaz, 95 F.3d 105, 111 n.6 (1st Cir. 1996).

If presented with a marginal case, we defer to the issuing magistrate's determination of probable cause. Illinois v. Gates, 462 U.S. 213, 238 (1983).

## DISCUSSION

Plaintiffs contend that the search of the house pursuant to an invalid warrant issued on an insufficient affidavit violated their Fourth Amendment rights. The district court held that the defendant officers were entitled to qualified immunity because under the circumstances set forth in the affidavit, it was not unreasonable for them to conclude that one or more of the robbers might be in the Rodríguez residence and that plaintiffs had failed to cast any real doubt on the validity of the warrant.

## I.      QUALIFIED IMMUNITY

The parameters of qualified immunity are well settled and we need plow no new ground. Qualified immunity protects government officials performing discretionary functions from liability and the burdens of litigation. Hainey, 391 F.3d at 29.[1] In determining whether a government official has qualified immunity, this court conducts a three-part inquiry: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii)

---

[1]Ms. Rodríguez brought this suit under Bivens, but for purposes of a qualified immunity analysis courts treat Bivens actions and § 1983 actions as being the same. Wilson v. Layne, 526 U.S. 603, 609 (1999). Thus, when conducting the analysis, we cite cases discussing qualified immunity regardless of the basis for plaintiff's claim.

-4-

whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A court should conduct the analysis in this sequence and at the earliest possible stage in the case. Hainey, 391 F.3d at 29-30.

**II.    THE WARRANT**

We begin our discussion with the warrant because the presence of a valid warrant is essential to the lawfulness of the search (in the absence of exigent circumstances). It was clearly established law at the time of the search that a warrant must describe the things to be seized with particularity. The Fourth Amendment states that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched and the persons *or things to be seized*." U.S. Const. amend. IV (emphasis added); see In re Lafayette Acad., 610 F.2d 1, 3 (1st Cir. 1979)(holding warrant invalid for lack of particularity). In United States v. Morris, 977 F.2d 677, 681 (1st Cir. 1993), we stated:

> In requiring a particular description of
> articles to be seized, the Fourth Amendment

-5-

"'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" <u>United States</u> v. <u>Fuccillo</u>, 808 F.2d 173, 175 (1st Cir. 1987) (quoting <u>Stanford</u> v. <u>Texas</u>, 379 U.S. 476, 485 (1965)). Unfettered discretion by the executing officer is one of the principal evils against which the Fourth Amendment provides protection, and thus warrants which lack particularity are prohibited.

The warrant supporting the search of Ms. Rodríguez's home contained no description of the property to be seized. In the space on the form calling for the magistrate to "describe the person or property" believed to be on the premises to be searched, the warrant simply restated the description of the premises to be searched.[2] Considering only the face of the warrant, no reasonable officer could believe it described the items to be seized with particularity.

_____

[2] One residence located at #31 Eugenio Maria de Hostos Street, Caguas, Puerto Rico, described as a rust colored two story residence, with a patio located on the roof. A stairwell is located on the right side of the structure which leads up to a small room. A concrete wall, approximately 6 ft. in height, brown in color, with square holes, and a black wrought iron gate, approximately 6 ft. in height are located at the front of the residence. The gate slides manually from left to right. Two doors, white in color, can be distinguished in the front of the residence. A wall separates the residence from the street behind the residence.

Defendants contend, however, that a warrant that does not contain a description of the property to be seized may nevertheless be valid under the Fourth Amendment if it cross-references and is accompanied by supporting documents which contain the required description. In Lafayette Academy we said, "'The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it . . . . Specificity is required in the warrant itself in order to limit the discretion of the executing officer as well as to give notice to the party searched.'" 610 F.2d at 4 (quoting United States v. Johnson, 541 F.2d 1311, 1325 (8th Cir. 1976)). We recognized, however, that under some circumstances an affidavit may cure deficiencies which would exist were the warrant to stand alone. We said in United States v. Klein, 565 F.2d 183, 186 n.3 (1st Cir. 1977), "An affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant and the warrant uses suitable words of reference which incorporate the affidavit." See also, Groh v. Ramirez, 540 U.S. 551, 557-58 (2004) (listing cases from multiple circuits which have allowed warrants to be construed with reference to an incorporated affidavit).

Here, the warrant stated, "See attached affidavit," language which suffices to incorporate the affidavit. See Massachusetts v. Sheppard, 468 U.S. 981, 990 n.7 (1984). A

reasonable officer standing in defendants' shoes could believe the warrant to be sufficient to authorize the search.[3]

## III.      THE AFFIDAVIT

We next consider whether a reasonable officer could have believed that probable cause existed to search the Rodríguez residence. Malley, 475 U.S. at 344-45. Probable cause existed if the "totality of the circumstances" disclosed in the Beninato affidavit demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. For purposes of qualified immunity, the test is whether the unlawfulness of the search would have been apparent to an objectively reasonable officer standing in defendants' shoes. Hainey, 391 F.3d at 31. Qualified immunity will be lost only if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley, 475 U.S. at 345.

The Beninato affidavit, on the basis of which the warrant issued, relates the facts of an armored car robbery carried out by unidentified persons on May 19, 2003. With reference to the search

---

[3]Plaintiffs, who bear the burden of establishing the invalidity of the search, have not shown that the affidavit did not accompany the warrant to the search. See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1188 (10th Cir. 2006) ("After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, and the plaintiff must first establish that the defendant's actions violated a constitutional or statutory right.").

of Ms. Rodríguez's residence, it contains the following information:

1. An anonymous source reported that on the morning of May 19, 2003, the source observed individuals transferring bags from a minivan in which the robbers had escaped to other vehicles, including a white Mitsubishi Mirage Technica.

2. Another anonymous source reported on October 2, 2002, that the two individuals who robbed a bank on October 1, 2002, drove a white Mitsubishi Mirage Technica, plate DBW-680, and that one of the individuals lived at Calle Eugenio Maria de Hostos #31 with his mother.

3. In an interview with police, Alfredo Neris Rivera advised that his mother resides at Eugenio Maria de Hostos.[4]

4. Witnesses (in addition to anonymous sources) also placed the white Mitsubishi Mirage Technica, plate DBW-680, at the scene of three bank robberies during June, July, and October 2002.

5. On May 21, 2003, law enforcement officers located the white Mitsubishi Mirage Technica, plate DBW-680, "at Calle Eugenio Maria de Hostos."

When an affidavit relies on the statements of anonymous sources, it must provide some information upon which the magistrate judge may assess the credibility of the sources' information.

[4]The affidavit disclosed that the white Mitsubishi Mirage Technica was registered to Arodi Rolon Alvarado but did not disclose that, as the court found, Arodi was Alfredo's wife.

United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002). A nonexhaustive list of factors that a reviewing court will consider in a probable cause determination from an informant includes: whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether informant statements are self-authenticating; whether a law enforcement affiant included a professional assessment of the probable significance of the facts related by the informant based on experience or expertise; and, whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable. Id.

The affidavit relied on three anonymous sources.[5] It is silent with respect to the veracity or basis of knowledge of the sources, the sources' reliability, and how the sources obtained the information. It does not contain a law enforcement officer's professional assessment of the probable significance of the facts related by the informants based on his experience or expertise. And the informants' statements were not self-authenticating.

None of the factors, however, is indispensable. Stronger evidence on one may compensate for a weaker or deficient showing on another. Zayas-Diaz, 95 F.3d at 111. Here, the affidavit contained information that provided substantial cross-

---

[5]As the information from the other sources is sufficient, we need not consider that from a third anonymous source.

corroboration. Several informants and witnesses known to the police saw the white Mitsubishi Mirage Technica at the scene of three 2002 bank robberies and an informant saw it again on the day of the 2003 armored car robbery receiving bags being unloaded from the robbers' van. Two days after the 2003 robbery, police located the white Mitsubishi Mirage Technica, plate DBW-680, at Calle Eugenio Maria de Hostos. One informant saw two individuals who robbed a bank on October 2, 2002, driving a white Mitsubishi Mirage Technica and advised that one of them lived at Calle Eugenio Maria de Hostos #31 with his mother. Alfredo Rodríguez told police that his mother resides at Calle Eugenio Maria de Hostos #31.

Considering the totality of the circumstances, a reasonable officer could infer that the white Mitsubishi Mirage Technica was being used in connection with robberies, that one of the persons implicated in the robberies lived at Calle Eugenio Maria de Hostos #31 where the car was spotted, and that therefore contraband might be found at that location.

## IV.        THE REMAINING ISSUES

Plaintiffs' remaining contentions are readily disposed of. Plaintiffs concede that the Constitution does not require the searching officer to serve the search warrant before commencing the search. See Groh, 540 U.S. at 562 n.5.

Finally, plaintiffs contend that the search was unreasonable as a nighttime search in violation of the Fourth

-11-

Amendment and of the 6:00 a.m. to 10:00 p.m. time frame specified in the warrant.[6]  The district court did not make a finding of the time at which the search commenced but it did find that a commanding officer "ordered the FBI SWAT team to enter the residence at approximately 5:50 a.m."  Thus, the execution must have occurred sometime after 5:50 a.m.—close enough to the 6:00 a.m. hour to make any deviation from the warrant de minimis. See United States v. Twenty-Two Thousand, Two Hundred Eighty Seven Dollars, 709 F.2d 442, 448-49 (6th Cir. 1983).

**CONCLUSION**

We conclude that on the record before us, defendants were entitled to qualified immunity.  See Wilson v. Layne, 526 U.S. 603, 609 (1999).  The judgment is AFFIRMED.

**Affirmed.**

---

[6]This was no nighttime search.  According to the United States Naval Observatory, on May 22, 2003, the sun rose at 5:49 a.m. in San Juan. United States Naval Observatory, Sunrise Calculator, http://aa.usno.navy.mil/data/docs/RS_OneDay.html.

-12-