SUPERIOR COURT 
 
 COMMONWEALTH vs. YULIAN ROSADO

 
 Docket:
 2384CR00091
 
 
 Dates:
 June 3, 2024
 
 
 Present:
 William F. Bloomer Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Paper No. 24 and 31) AND MOTION TO SUPPRESS SEARCH WARRANT PURSUANT TO FRANKS v. DELAWARE (Paper No. 32)
 
 

             The defendant, Yulian Rosado ("Rosado"), moves to suppress evidence seized by police during the execution of a federal search warrant issued for 18 Rector Road, Apartment 3, in Mattapan. In his pursuit of suppression of evidence, Rosado also requests that the court conduct a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). After hearing, and for the
reasons set forth below, Rosado's motions are DENIED.
            I. Background
            On March 3, 2022, United States Special Agent Sean Sullivan ("Sullivan") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") submitted an affidavit in support of an application for a federal warrant authorizing the search 18 Rector Road, Apartment 3, Mattapan, Massachusetts (the "Target Location") for evidence related to violations of 18 U.S.C. §§ 922(a)(l)(A) and 922(a)(6). [1] That same date, U.S. Chief Magistrate Judge Page Kelley issued
 
--------------------------------------------
 
[1] Title I8, § 922(a)(6) of the United States Code makes it unlawful for any person, in connection with the acquisition or attempted acquisition of any firearm from a licensed dealer, to knowingly make a materially false or fictitious oral or written statement to such a licensed dealer which is intended or likely to deceive such a dealer with respect to the sale of such a firearm. Section 922(a)( I)(A) make s it unlawful for any person, except a licensed importer , manufacturer, or dealer, to engage in the business of import ing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.
 
                                                            -1-
 
the warrant, which authorized a search of the Target Location for, among other things, records related to the violations of the above federal criminal statutes, tangible objects (including firearms and ammunition), mobile telephones, and computer systems.
            II. The Request for a Franks Hearing
            To be entitled to a Franks hearing, Rosado bears the burden of making two " substantial preliminary showing[s]." Commonwealth v. Long, 454 Mass. 542, 552 (2009). Rosado must first demonstrate that Sullivan either included a false statement or omitted material "knowingly and intentionally, or with reckless disregard for the truth or intentionally or recklessly omitted material in the search warrant affidavit." Commonwealth v. Andre, 484 Mass. 403, 407-408 (2020) (internal quotations and citations omitted). Mere negligence on the part of the affiant is insufficient. Commonwealth v. Nine Hundred & Ninety-two Dollars, 383 Mass. 764, 769 n.7 (1981). Rosado next must show that the false statement was necessary for the probable cause determination "or that the inclusion of the omitted information would have negated the magistrate's probable cause finding." Andre, 484 Mass. at 408.
To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.
Franks, 438 U.S. at 171.
            If Rosado makes these substantial preliminary showings, he is entitled as a matter of law to a Franks hearing. Commonwealth v. Valdez, 402 Mass. 65, 67 (1988). The court also has discretion to order a Franks hearing in the absence of the required substantial preliminary showings. Commonwealth v. Signorine, 404 Mass. 400,406 (1989).
 
                                                            -2-
 
            Here, Sullivan's affidavit sets forth information from a named informant, Isael Rodriguez ("Rodriguez"), who, along with Rosado, was the subject of ATF's investigation. ATF agents interviewed Rodriguez on November 9 and November 15, 2021. Sullivan noted in his affidavit that during the first interview, "after initially providing false answers designed to protect himself and others regarding the circumstances surrounding his purchase and subsequent sales of the firearms," Rodriguez admitted to having sold ten to twelve Glock handguns for cash to a friend named "Julian," a/k/a "Juju."  Rodriguez, the defendant asserts, told agents that all the sales of the firearms to Juju occurred at a garage in Lowell.  Rodriguez took agents to his residence where he surrendered two handguns, a shotgun, and several magazines. ATF agents also obtained Rodriguez's consent in writing to a search of his cellphone. A search of that mobile device revealed text messages between Rodriguez and Rosado from January through July 2021 that describe in detail Rodriguez' s acquisition of ammunition and numerous firearms, including
different generations of Glock handguns, from a licensed dealer and selling the weapons and ammunition to Rosado. Several of those text messages were accompanied by photographs of the firearms, magazines, and carrying cases that Rodriguez had available to sell to Rosado. In one text message on May 24, 2021, Rosado instructs Rodriguez to take pictures of the firearms before bringing the guns to "18 rector rd Mattapan."[2] Rosado repeats the address of" 18 rector rd" in a text message to Rodriguez on July 4, 2021, while addressing the price of a Sig Sauer firearm. Rodriguez and Rosado also exchanged voice messages regarding the illegal transfer of firearms.
 
--------------------------------------------
 
[2] Rosado appears to challenge Sullivan's interpretation of the text messages. It is not enough for Rosado to simply offer his own interpretation of the events in question, however, to warrant a Franks hearing. Commonwealth v. Dunn, SJC-13454, Slip Op. at *27-28 (May 9, 2024).
 
                                                            -3-
 
            Rosado submits there are "numerous lies , denials, and coaxed admissions and descriptions made by the informant," arguing that the affiant's lies by omission and misrepresentation of the veracity and reliability of Rodriguez's information arc "prolific." The court has had considerable difficulty, however, teasing out the precise statements in Sullivan's affidavit that Rosado claims are deliberately false or were made with reckless disregard for the truth. At the hearing in connection with these motions, Rosado focused on the November 15,
2021, interview of Rodriguez and Sullivan's representations in his affidavit regarding Rodriguez's statements during that interview . See Sullivan Aff. ¶¶ 15-17.
            This court has reviewed the recorded interview of Rodriguez by ATf agents on November 15, 2021, and the accompanying transcript of that interview. Ex. 1 & 2. During the interview, agents confronted Rodriguez with the incriminating text messages and challenged his assertion that all the gun sales involving Rosado occurred at a garage in Lowell. Rodriguez responded that Rosado most often would go to Rodriguez's garage in Lowell and that he brought firearms to Rosado's home "maybe once." See Ex. 2 at *39.[3]  Paragraph  17 of Sullivan's affidavit states in part, "RODRIGUEZ also told investigators that he brought firearms to ROSADO's house on at least one occasion." This court agrees that the affiant should have provided a more fulsome explanation of Rodriguez's statements for the issuing magistrate to consider. However, the inclusion of a more detailed description of the agents' exchanges with Rodriguez would not, in this court's view, have resulted in a finding of no probable cause. Sec
 
--------------------------------------------
 
[3] Rodriguez informed agents he had been at Rosado's home two or three times. It is apparent, at least to this court, that Rodriguez was atte mpt ing to minimize the involvement of others , including Rosado, in this gun trafficking scheme. Rosado's displeasure with how the agents dealt with this recalcitrant source of information during the interview, however, does not entitle him to a Franks hear in g. It is not uncommon for individuals caught up in the net of a federal investigation to attempt to minimize their and others' involvement in a criminal conspiracy, and the agents' method of confronting Rodriguez with information such as text messages that contradicted Rodriguez's minimization attempts was not improper.
 
                                                            -4-
 
Commonwealth v. Corriveau, 396 Mass. 319, 334-335 (1985) (affidavit with omitted material "would not have conveyed a significantly different message" regarding probable cause from that in submitted affidavit without omitted material). See also United States v. McLellan, 792 F.3d 200,208 (1st Cir.), cert. denied, 577 U.S. 980 (2015), quoting United States v. Rigaud , 684 F.3d 169, 173 n.5 (1st Cir. 2012) ("In the case of an omission, this means establishing that the inclusion of the omitted information 'would have led to a negative finding by the magistrate on probable cause"' [emphasis in original]). Rodriguez admitted to selling ten to twelve firearms to Rosado, and the detailed incriminating text and voice messages contained in Sullivan's affidavit corroborated this assertion. Of significance here, the affidavit included a copy of two text messages from Rosado to Rodriguez in which Rosado provided his home address in the context of Rosado acquiring firearms from Rodriguez on two separate occasions. The magistrate judge could reasonably infer that Rodriguez brought firearms to Rosado at the Target Location one or more times after reviewing these text messages. [4]
            For the reasons set forth above, the court concludes the defendant has failed to meet the substantial preliminary showing required to be entitled to a Franks hearing. The court also declines, in its discretion, to conduct a Franks hearing for the reasons stated above.
            III. Applicable Law
            The court concludes that federal law applies in connection with the evaluation of the sufficiency of the search warrant application in this case. The record before the court does not support a finding that there was a "combined enterprise" between federal agents and state or local law enforcement officials to investigate Rosado and Rodriguez for gun trafficking. See
 
--------------------------------------------
 
[4] Conversely, even if the statement regarding Rodriguez delivering firearms to Rosado's home "on at least one occasion" is excised from the affidavit, there is still sufficient information contained in Sullivan' s affidavit to make a probable cause determination, particularly under the federal " totality of circumstances" test, described infra.
 
                                                            -5-
 
Commonwealth v. Pinto, 45 Mass. App. Ct. 790, 792 (1998). See also Commonwealth v. Gonzalez, 426 Mass. 313, 315- 317 (1997); Commonwealth v. Jarabek, 384 Mass. 293,297 (1981). Here, a federal agent applied for a federal search warrant in connection with the investigation of violations of the federal criminal code. Simply because the locus of the search was in Massachusetts does not, as Rosado suggests, mean state law must apply. Nor docs the fact that ATF agents received intelligence from local police or assistance from municipal officers in the execution of the search warrant compel the conclusion that state law applies in this case. Even if state or municipal officers did assist ATF agents in the investigation , the record here does not support a finding that their participation "was high enough, either in quantity or quality, to alter the essentially Federal nature of the investigation." Gonzalez, 426 Mass. 317. The court therefore concludes federal law applies in evaluating Rosado' s challenge to the search warrant.
            IV. The Search Warrant Application
            The Fourth Amendment to the United States Constitution guarantees an individual the right to be free from all unreasonable searches and seizures and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation[.]... " It is settled that, "i]n determining the sufficiency of an affidavit, [federal courts] consider  whether the 'totality of the circumstances'  stated in the affidavit demonstrates probable cause to search the premises." United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002), quoting United States v. Khounsavanh, 113 F.3d 279,283 (1st Cir.1997). See Illinois v. Gates, 462 U.S. 213, 238-239 (1983) (abandoning "rigid" two-pronged Aguilar-Spinelli test in favor of "totality of the circumstances" test). Under Gates, "(t]he task of the issuing magistrate judge is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the ' veracity' and ' basis of knowledge' of persons supplying hearsay
 
                                                            -6-
 
information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238.
            Federally, an affidavit supporting a search warrant is presumptively valid. United Stales v. Leonard, 17 F.4th 218,224 (1st Cir. 2021). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de nova review." Gates, 462 U.S. at 236. "In reviewing the affidavit supporting an application for a search warrant, [federal appellate courts] give significant deference to the magistrate judge's initial evaluation, reversing only if [the courts] see no 'substantial basis' for concluding that probable cause existed."  United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005) (citation omitted). The language of the warrant and its supporting documents is read " not ' hypertechnically,' but in a ' commonsense ' fashion." United States v. Barnes, 492 F.3d 33, 38 (1st Cir. 2007), quoting United Stales v. Gendron, 18 F.3d 955, 966 (1st Cir.1994). Further, courts defer to the issuing judge' s probable cause determination in "doubtful or marginal case[s]." Barnard, 299 F.3d at 93.
            Sullivan's affidavit contained sufficient information to conclude that, given all the circumstances, there was a fair probability that records related to the purchase and sale of firearms, as well as the weapons themselves, would be found inside Rosado's home at 18 Rector Road, Apartment 3. See Leonard, 17 F.4th at 228 (with respect to nexus requirement, judicial officer must make practical commonsense decision whether, given all circumstances, fair probability exists evidence will be found in particular place). Rodriguez was named in the affidavit along with having his home address disclosed, and Rodriguez made admissions to engaging in criminal conduct himself. See United States v. Croto , 570 F.3d 11, 14 (1st Cir. 2009) (identification of informants in affidavit bolsters their credibility); United States v. Vongkaysone, 434 F.3d 68, 74 (1st Cir. 2006) (statement against penal interest bolsters
 
                                                            -7-
 
informant's credibility). Moreover,  the agents  independently  corroborated  Rodriguez's information. See United States v. Vargas, 931 F.2d 112 , 114 ( 1st Cir. 1991) (police corroborated first-time anonymous informant's information  through  means  such  as  surveillance  before applying for search warrant).
            Here, Rodriguez admitted to agents that he sold ten to twelve firearms to Rosado and that he and Rosado both made a profit. He surrendered weapons and magazines in his possession to agents. Agents performed a consent search of Rodriguez 's cellphone and discovered incriminating text messages between Rodriguez and Rosado from January through July 2021, many of which were accompanied by pictures of different generations of Glock handguns that Rodriguez obtained from a licensed dealer and agreed to sell to Rosado. Rosado provided Rodriguez his home address in two of these text messages in the context of Rosado acquiring Glock and Sig Sauer firearms from Rodriguez. The two men also exchanged voice messages regarding Rosado's acquisition of Glock handguns from Rodriguez. These text and voice messages directly corroborate Rodriguez 's sta tement that he sold approximately one dozen firearms to Rosado. Agents further confirmed that the number assigned to the cellphone Rosado used to communicate with Rodriguez belonged to Rosado.[5]
            Agents showed Rodriguez a photograph of 18 Rector Road, and Rodriguez said "it looked like 'Juju's' residence." He described the interior of the building and identified where Rosado's room was located within the apartment. He also noted that Rosado lived with his mother and two dogs. This detailed information demonstrated Rodriguez's knowledge of and familiarity with Rosado's residence and living arrangements. See United States v. Zayas- Diaz,
 
--------------------------------------------
 
[5] Sullivan note s in his affidavit that a recent Boston Police report pertaining to an encounter with Rosado listed Rosado's address and "home" telephone number, which matched the telep hone number provided by Ro driguez. The magistrate judge could reasonably infer from this information that the mobile telephone number Rodriguez texted to communicate with the defendant belonged to Rosado.
 
                                                            -8-
 
95 F.3d 105, 111 (1st Cir. 1996) (informant's statements reflect firsthand knowledge). Agents confirmed that Rosado resided at 18 Rector Road through various records checks with the Massachusetts Board of Probation, the Boston Police Department, Accurint (a law enforcement database), physical surveillance placing an individual matching Rosado's description and likeness going into and out of the home on February 24, 2022, and the current lease for Apartment 3, which was in Rosado's mother's name. Finally, agents confirmed that Rosado did not possess a license to carry firearms or a firearm identification card and that neither Rodriguez nor Rosado were licensed firearms dealers as defined in 18 U.S.C. § 921.
            With respect to Rosado 's staleness claim, "[t]he law sensibly draws no bright-line rule for staleness." Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007). See United States v. Tiem Trinh, 665 F.3d I, 13-14 (1st Cir. 2011) (refusing to assess affidavit's staleness by counting number of days between alleged criminal conduct and warrant's issuance as "a merchant would beads on an abacus"). In assessing the information's " ripeness," federal courts consider various factors, including " the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information. " Tiem Trinh, 665 F.3d at 13. The text and voice messages here revealed an ongoing pattern over several months during which Rodriguez sold Rosado ten to twelve firearms that he had acquired from a licensed dealer. " [F]irearms, unlike drugs, arc durable goods useful to their owners for long periods of time." United States v. Singer, 943 F.2d 758, 763 (7th Cir. 1991) (holding that six-month old information about firearm was not "stale" ). See United States v. Ponzo, 853 F.3d 558, 573 (1st Cir. 2017) (information that defendant had gone to shooting range four months earlier not stale). The magistrate judge
further could credit Sullivan's representation that gun traffickers typically store records related to illegal firearms trafficking in their residences. Ponzo, 853 F.3d at 574. Given the number of
 
                                                            -9-
 
weapons transferred, the magistrate judge had a substantial basis to conclude that firearms and records related to the transfer of firearms obtained from a dealer would be found inside Rosado's home despite the passage of time.
            This court finds that, under the totality of the circumstances test, the facts contained in Sullivan's affidavit, and the reasonable inferences to be drawn therefrom, were sufficient for the issuing federal magistrate judge to conclude that violations of 18 U.S.C. §§ 922(a)(1)(A) and 922(a)(6) had occurred and that probable cause existed to believe that the items sought in the warrant would be found in 18 Rector Road, Apartment 3, in Mattapan.
ORDER
            For the reasons set forth above, the Defendant's Motion to Suppress Evidence (Paper No. 24 and 31) and Motion to Suppress Search Warrant Pursuant to Franks v. Delaware (Paper No. 32) are DENIED.